THE STATE OF OHIO, APPELLEE, *v.* CLARK, APPELLANT.

[Cite as *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748.]

(Nos. 2007–0983 and 2007–1047—Submitted March 11, 2008—Decided July 31, 2008.)

---

MOYER, C.J.

I

{¶ 1} The Eleventh District Court of Appeals has certified this case pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25. The court of appeals found its judgment to be in conflict with the judgment of the Twelfth District Court of Appeals in *State v. Prom*, 12th Dist. No. CA2002–01–007, 2003-Ohio-6543, 2003 WL 22887906, on the following issue: "Is a guilty plea knowing, intelligent, and voluntary when the trial court misinforms the defendant that he or she will be subject to five years post-release control if released and up to nine months in prison for any violation when, in fact, the defendant faces a lifetime of parole and re-incarceration for life for any violation?" We accepted defendant-appellant Ralph E. Clark's discretionary appeal on the same issue.

{¶ 2} For the following reasons, we reverse the judgment of the court of appeals and hold that for a plea to be knowingly, intelligently, and voluntarily made, the trial judge must substantially comply with Crim.R. 11 by informing the defendant about the applicability of postrelease control and parole to his or her sentence. However, we remand the cause and instruct the court of appeals to determine whether Clark was prejudiced by the trial judge's incorrect statement of the law so as to warrant vacating his guilty plea.

II

A

{¶ 3} In 2005, defendant-appellant Ralph E. Clark was indicted for the murder of his wife, Carolyn Clark. Less than one week before trial, Clark agreed to plead guilty to one count of aggravated murder with a gun specification in exchange for the state's dismissal of two counts of murder with accompanying gun specifications and one of the two specifications to the aggravated-murder count. The prosecutor and defense counsel jointly recommended that Clark be sentenced to life imprisonment with parole eligibility after 28 years, i.e., after serving three years for the gun specification and 25 years of the aggravated murder sentence.

{¶ 4} In Clark's appeal, he argued that his plea was not knowingly, intelligently, and voluntarily made. He contended that the trial judge failed to comply with Crim.R. 11(C)(2)(a) in his plea colloquy when the judge incorrectly stated that Clark would be subject to postrelease control after serving his sentence. The certified question of law refers to various incorrect statements of law made in the trial judge's colloquy in accepting the agreement. However, the misstatements were not limited to that colloquy; they also permeated the written plea agreement Clark signed and the sentence that the trial judge described and imposed at the sentencing hearing. This series of misstatements appears more fully below.

### The Plea Agreement

{¶ 5} After a plea agreement was reached, Clark, his attorney, and the prosecuting attorney signed a written agreement. This document states:

{¶ 6} "I understand that the maximum penalty for the crime of aggravated murder is life imprisonment *without parole* pursuant to Section 2929.03(A)(1)(a) and that the sentence for the three year gun specification shall be served consecutively to the sentence imposed for aggravated murder.

{¶ 7} " * * *

{¶ 8} *"Post–Release Control.* I understand that after I am released from prison, I may have a period of post-release control for five (5) years following my release from prison. If I violate a post-release control sanction imposed upon me, any one or more of the following may result.

{¶ 9} "(1) The Parole Board may impose a more restrictive post-release control sanction upon me; and

{¶ 10} "(2) The Parole Board may increase the duration of the post-release control subject to a specified maximum; and

{¶ 11} "(3) The more restrictive sanction that the Parole Board may impose may consist of a prison term, provided that the prison term cannot exceed nine months and the maximum cumulative prison term so imposed for all violations during the period of post-release control cannot exceed one-half of the stated prison term originally imposed upon me; and

{¶ 12} "(4) If the violation of the sanction is a felony, I may be prosecuted for the felony and, in addition to any sentence it imposes on me for the new felony, the Court may impose a prison term, subject to a specified maximum, for the violation." (Emphasis added.)

{¶ 13} The postrelease-control portion of this agreement incorrectly combines the concepts of postrelease control and parole to create a hybrid form of control that conflicts with the precise descriptions of the systems of postrelease control and parole in R.C. Chapter 2967.

### The Plea Colloquy

{¶ 14} At the plea hearing, the trial judge orally addressed Clark in the process of accepting his agreed-upon plea. First, the judge informed him of the maximum sentence for aggravated murder: "The Court can order life imprisonment without the possibility of parole eligibility or I can order life imprisonment with parole eligibility after 20 years, after a full 25 years, or after a full 30 years." The trial court also informed Clark that he faced a mandatory three-year sentence for the gun specification. That portion of the plea colloquy was correct and did not prejudice any of Clark's rights.

{¶ 15} Unfortunately, after accurately explaining those penalties, the trial judge incorrectly explained postrelease control and parole. As in the plea agreement, the trial judge used the terms interchangeably, telling Clark that he would be subject to postrelease control, which was contrary to R.C. 2967.28.

{¶ 16} The trial court said: "Now, next I'm required to tell you the Court will be imposing a prison term and once that prison term is imposed, you're going to be required to serve the prison term that's imposed. Again, in this case, it's going to be at least 28 years." That statement is correct.

{¶ 17} However, the trial court elaborated on that correct statement with a discussion of postrelease control and parole: "After you serve your prison term, you'll be eligible for release under post-release control. And I believe in your case, if you do receive parole, your post-release control will be mandatory. And that means that there will be certain conditions that you're going to have to live up to after you're released, if you're released after 28 years.

{¶ 18} "The *maximum* period of time you could be on post-release control would be five years. And I would expect you'd probably get the full five years.

{¶ 19} "There would be certain conditions that you'd have to fulfill. One condition, obviously, would be that you'd have to remain law abiding. But there would be other conditions.

{¶ 20} "Now, if you're placed on post-release control and if you violate any of those conditions of post-release control, you'd be charged with a violation and you would have a hearing before the Parole Board, and if it were determined at the hearing that you had violated one or more conditions of your post-release control, you could have a new prison term imposed of *up to nine months in duration*; however, the total of all such new prison terms could not exceed one-half of your original sentence." (Emphasis added.) These statements are not correct.

## The Sentencing Hearing

{¶ 21} The trial court further explained postrelease control and parole at Clark's sentencing hearing by using the terms interchangeably and incorrectly informing Clark that he would have a mandatory period of control "for at least five years" if he were released from prison. The trial court then reiterated the same potential consequences for violating postrelease control that it explained at the plea hearing. The final sentencing entry correctly imposed the sentence of life in prison with parole eligibility after 28 years and incorrectly stated that "the offender will be subject to a period of post-release control pursuant to R.C. 2929.14(F) and R.C. 2967.28(B) & (C)."

## B

{¶ 22} The court of appeals determined that the trial court erred in discussing postrelease control and that it provided a deficient explanation of the parole process. *State v. Clark,* Ashtabula App. No. 2006–A–0004, 2007-Ohio-1780, 2007 WL 1113968, ¶ 15–19. However, it held that the trial court substantially complied with the mandates of Crim.R. 11(C)(2)(a) because Clark was informed of the maximum prison sentence he faced. Id. at ¶ 26. It also discussed whether Clark had demonstrated that he was prejudiced by the trial court's errors and suggested that he had not. Id. at ¶ 28.

{¶ 23} The court of appeals affirmed the judgment of the trial court on this issue. It subsequently determined that its decision conflicted with a decision of the Twelfth District Court of Appeals, *State v. Prom,* 12th Dist. No. CA2002–01–007, 2003-Ohio-6543, 2003 WL 22887906, and certified the case as a conflict to this court. We accepted Clark's discretionary appeal and recognized the certified conflict.

## III

{¶ 24} Clark argues that his plea was not knowingly, intelligently, and voluntarily made because the trial judge informed him that he would be subject to a limited period of postrelease control and that a violation of postrelease control would result in a resentencing of no more than nine months, when actually he could face lifetime monitoring and the reimposition of his original sentence for a parole violation. It is necessary to review the law on the submission of pleas of guilty and pleas of no contest to address this argument.

{¶ 25} A criminal defendant's choice to enter a plea of guilty or no contest is a serious decision. The benefit to a defendant of agreeing to plead guilty is the elimination of the risk of receiving a longer sentence after trial. But by agreeing to plead guilty, the defendant loses several constitutional rights. *Boykin v. Alabama* (1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274; *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474. The exchange of certainty for some of the most fundamental protections in the criminal justice system will not be permitted unless the defendant is fully informed of the consequences of his or her plea. Thus, unless a plea is knowingly, intelligently, and voluntarily made, it is invalid. See *State v. Engle* (1996), 74 Ohio St.3d 525, 527, 660 N.E.2d 450.

{¶ 26} To ensure that pleas conform to these high standards, the trial judge must engage the defendant in a colloquy before accepting his or her plea. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115, paragraph one of the syllabus; Crim.R. 11(C), (D), and (E). It follows that, in conducting this colloquy, the trial judge must convey accurate information to the

defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea.

{¶ 27} Before accepting Clark's plea at the plea hearing, the trial judge was bound by the requirements of Crim.R. 11(C)(2). Under this rule, the trial judge may not accept a plea of guilty or no contest without addressing the defendant personally and (1) "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing," (2) informing the defendant of the effect of the specific plea and that the court may proceed with judgment and sentencing after accepting it, and ensuring that the defendant understands these facts, and (3) informing the defendant that entering a plea of guilty or no contest waives the constitutional rights to a jury trial, to confrontation, to compulsory process, and to the requirement of proof of guilt beyond a reasonable doubt and determining that the defendant understands that fact. Id. at (C)(2)(a) through (c).

{¶ 28} Over the past few years, we have decided several cases on the application of Crim.R. 11. See, e.g., *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224; *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51. In each instance, the trial court error was easily avoidable.

{¶ 29} We urge trial courts to avoid committing error and to literally comply with Crim.R. 11. "Literal compliance with Crim.R. 11, in all respects, remains preferable to inexact plea hearing recitations." *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19, fn. 2, citing *State v. Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. The best way to ensure that pleas are entered knowingly and voluntarily is to simply follow the requirements of Crim.R. 11 when deciding whether to accept a plea agreement.

{¶ 30} If a trial court fails to literally comply with Crim.R. 11, reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy.

{¶ 31} When a trial judge fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c), the guilty or no-contest plea is invalid "under a presumption that it was entered involuntarily and unknowingly." *Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12; see also *Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474, citing *Boykin*, 395 U.S. at 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274. However, if the trial judge imperfectly explained nonconstitutional rights such as the right to be informed of the maximum possible penalty and the effect of the plea, a substantial-compliance rule applies. Id. Under this standard, a slight

deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that "the defendant subjectively understands the implications of his plea and the rights he is waiving," the plea may be upheld. *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.

{¶ 32} When the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule. If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect. See *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 93, 5 O.O.3d 52, 364 N.E.2d 1163, and Crim.R. 52(A); see also *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 23. The test for prejudice is "whether the plea would have otherwise been made." *Nero* at 108, 564 N.E.2d 474, citing *Stewart*, id. If the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated. See *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d, 1224, paragraph two of the syllabus. "A complete failure to comply with the rule does not implicate an analysis of prejudice." Id. at ¶ 22.

## IV

{¶ 33} We next apply these tests to the facts of this case. Clark faced maximum sentences of life in prison without the possibility of parole for the crime of aggravated murder and three years in prison for the associated gun specification. See R.C. 2929.03(A)(1)(a); 2941.145(A). The trial judge correctly conveyed this information to him. In holding that the trial judge substantially complied with Crim.R. 11(C)(2)(a), the court of appeals focused on the facts that Clark was aware that the maximum penalty for aggravated murder was a life term and that there was no misinformation in that regard. We agree that if the trial judge had stopped at that point, he would have literally complied with Crim.R. 11(C)(2)(a), and there would be no issue for our review.

{¶ 34} However, the trial judge attempted to give Clark what the judge thought was a more complete understanding of his sentence by explaining the concepts of postrelease control and parole. Using terms that varied in their meaning throughout the proceedings, the trial judge informed Clark that, upon serving 28 years in prison, he would be subject to a hybrid of the two concepts that does not exist under Ohio law. The trial judge's comments completely obfuscated the maximum sentence, to the point that it was unclear how the sentence would end and what sanctions Clark would face upon release from prison.

{¶ 35} The disparity in the degree of potential limitations on Clark's liberty could be significant, depending upon his sentence. To illustrate this point, we briefly explain how the statutory schemes for postrelease control and parole differ. Defendants convicted of certain classified felonies (not including aggravated murder) are subject to a mandatory period of postrelease control. See R.C. 2967.28(B). Postrelease control is a period of supervision that occurs after a prisoner has served his or her prison sentence and is released from incarceration, during which the individual is subject to specific sanctions with which he or she must comply. R.C. 2967.01(N). Violation of these sanctions may result in additional punishment, such as a longer period of control, more restrictions during the control period, or a prison term of up to nine months per violation, subject to a cumulative maximum of one-half of the original stated prison term. See R.C. 2967.28(F)(1) through (3). When a sentence includes mandatory postrelease control, the trial judge must inform the defendant of that fact in the plea colloquy or the plea will be vacated. See *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, paragraph two of the syllabus.

{¶ 36} However, an individual sentenced for aggravated murder such as Clark is not subject to postrelease control, because that crime is an unclassified felony to which the postrelease-control statute does not apply. R.C. 2967.28. Instead, such a person is either ineligible for parole or becomes eligible for parole after serving a period of 20, 25, or 30 years in prison. See R.C. 2929.03(A)(1); 2967.13(A). Parole is also a form of supervised release, but it is not merely an addition to an individual's sentence. When a person is paroled, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release. R.C. 2967.02(C); 2967.13(E); 2967.15(A); 2967.16(C)(1). If a paroled person violates the various conditions associated with the parole, he or she may be required to serve the remainder of the original sentence; that period could be more than nine months. Ohio Adm.Code 5120:1–1–19(C).

{¶ 37} Even after a prisoner has met the minimum eligibility requirements, parole is not guaranteed; the Adult Parole Authority "has wide-ranging discretion in parole matters" and may refuse to grant release to an eligible offender. *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28; *State ex rel. Hattie v. Goldhardt* (1994), 69 Ohio St.3d 123, 125, 630 N.E.2d 696. Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy. See *Hill v. Lockhart* (1985), 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203.

{¶ 38} The trial judge was not required to discuss postrelease control or parole in Clark's plea colloquy under Crim.R. 11(C)(2), as Clark was not eligible for postrelease control, given his plea to an unclassified felony. See R.C. 2967.28(B)

and (C). When he expanded on the information set forth in the rule, the trial judge obscured the relatively straightforward maximum penalties for Clark's crimes. The judge described a decidedly different form of release from the one Clark actually faced under the law, a hybrid system that combined the mandatory term of years and the maximum possible sentences associated with postrelease control with the uncertainty of release associated with parole.

{¶ 39} Such an incorrect recitation of the law fails to meet the substantial-compliance standard. If a trial judge chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, the information conveyed must be accurate. The rule is in place to ensure that defendants wishing to plead guilty or no contest do so knowingly, intelligently, and voluntarily. Because of the substantial misinformation that the trial judge provided to the defendant in this case, the defendant could not have entered his plea knowingly, intelligently, and voluntarily. The fact that the trial court provided some correct information as well does not alter this conclusion, because the correction information was not provided in such a manner as to remedy the erroneous information.

{¶ 40} Despite the failure to substantially comply with Crim.R. 11, the trial judge did not simply ignore his duties under Crim.R. 11(C)(2)(a). Because the trial judge partially complied with the rule, Clark must show that he was prejudiced by the trial court's misinformation to successfully vacate his plea. See *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. Although it discussed prejudice in its opinion, the court of appeals did not reach a conclusion on the issue. We therefore remand the case for a full determination of prejudice.

## V

{¶ 41} To ensure that pleas of guilty and no contest are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies. Fundamental fairness requires courts to hold themselves to exceedingly high standards when explaining the law to defendants who have waived constitutional rights. For the foregoing reasons, we reverse the judgment of the court of appeals and remand the case for a determination of prejudice.

Judgment reversed
and cause remanded.

PFEIFER, O'CONNOR, and CUPP, JJ., concur.

LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 42} I respectfully dissent.

{¶ 43} When Clark entered a plea of guilty to aggravated murder, the trial court substantially complied with Crim.R. 11 by informing him of the maximum penalty for that offense—life in prison without the possibility of parole. As concluded by the court of appeals, no evidence exists to suggest that the trial court's erroneous explanation of the possible sanctions for a violation of parole induced Clark to enter his guilty plea. In the absence of evidence demonstrating detrimental reliance, the trial court's erroneous explanation of parole did not render his guilty plea invalid.

{¶ 44} The specific issue presented in this case is whether a guilty plea to aggravated murder, which carries a life sentence, is knowingly, intelligently, and voluntarily made if a judge mistakenly informs the defendant at the time of the plea that, if released from prison, the defendant will be subject to five years of postrelease control and up to nine months in prison for any violation when, in fact, the defendant faces a lifetime of parole and reincarceration for life for any violation.

{¶ 45} "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart* (1985), 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203, quoting *North Carolina v. Alford* (1970), 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162; see *Boykin v. Alabama* (1969), 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274; *Machibroda v. United States* (1962), 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473.

{¶ 46} To that end, when a trial court accepts a plea of guilty to any offense, it must advise a defendant, pursuant to Crim.R. 11, of the consequences of that plea.

{¶ 47} Crim.R. 11(C)(2)(a) provides that in felony cases, a trial court shall not accept a guilty plea without addressing the defendant personally and "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

{¶ 48} We have held that substantial compliance with Crim.R. 11 sufficiently informs a defendant of nonconstitutional rights. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 45; *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163. The right to be informed of the maximum penalty for an offense is not a constitutional right. See *State v. Ballard* (1981), 66 Ohio St.2d 473, 477, 20 O.O.3d 397, 423 N.E.2d 115 (recognizing that the Constitution requires the defendant to voluntarily and knowingly waive four rights for his plea to be valid: the privilege against compulsory self-incrimination,

the right to trial by jury, the right to confront one's accusers, and the right of the defendant to have compulsory process to obtain witnesses to testify on his behalf). Therefore, a defendant's plea is valid if the trial court's plea colloquy substantially complies with the Crim.R. 11(C)(2)(a) requirement that the court inform the defendant of the maximum penalty involved. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, citing *Stewart,* 51 Ohio St.2d at 92–93, 5 O.O.3d 52, 364 N.E.2d 1163.

{¶ 49} In this instance, the trial court informed Clark that the maximum sentence he faced was life imprisonment without the possibility of parole. The court then stated that it could sentence Clark to life imprisonment with parole eligibility after 20, 25, or 30 years and that the parties had recommended a sentence of life imprisonment with parole eligibility after 28 years (which included the three-year mandatory term for the firearm specification). The court further explained: "Now, on this gun specification that I just read to you under Specification 2, that calls for a mandatory three-year prison sentence. So, you would have to serve a three-year sentence on the gun specification, * * * plus you're—you'll get a life imprisonment sentence. And the Court will select one of those four alternatives of parole, either no parole eligibility or parole eligibility after 20, 25, or 30 years."

{¶ 50} The trial court then attempted to explain the terms of parole. At that point, the trial court erroneously informed Clark that he could be subject to five years of postrelease control and that if he violated the terms of his postrelease control, the parole board could impose a prison term that could not exceed nine months for each violation, up to one-half of his stated prison term for all violations. In reality, if Clark received parole and violated the terms of his release, he would return to prison to serve the remainder of his life sentence. Ohio Adm.Code 5120:1–1–19(c).

{¶ 51} However, Crim.R. 11 does not require a trial court to advise a defendant about the possibility of parole. Moreover, in *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. 366, 88 L.Ed.2d 203, the United States Supreme Court acknowledged that the Constitution does not require the court to provide information about parole eligibility in order for a guilty plea to be valid. Clark has no constitutional, statutory, or inherent right to be released before the expiration of his life sentence. See *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex* (1979), 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668; *State ex rel. Hogan v. Ghee* (1999), 85 Ohio St.3d 150, 151, 707 N.E.2d 494. Parole does not extend the penalty for an offense, but offers the opportunity for early release. R.C. 2967.01(E).

Accordingly, parole is neither a part of a maximum penalty nor a consequence of a guilty plea.

{¶ 52} In contrast, a mandatory term of postrelease control pursuant to R.C. 2929.14(F)(1) and 2967.28 is a sanction imposed in addition to a prison term that extends an offender's punishment beyond his maximum term of imprisonment. Therefore, a term of mandatory postrelease control is part of the maximum penalty for an offense. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22. Thus, Crim.R. 11 does require a sentencing court to advise a defendant that the sentence will include a mandatory term of postrelease control, *Sarkozy* at paragraph two of the syllabus, but does not require the court to advise of the possibility of parole.

{¶ 53} The maximum penalty for the offense of aggravated murder is life in prison, and parole represents the *possibility* of early release from that imprisonment at the discretion of the parole board. Thus, by accurately informing Clark that the maximum sentence he faced for his offense was life in prison without the possibility of parole, the trial court substantially complied with Crim.R. 11(C)(2)(a). Moreover, Clark acknowledged that he understood the maximum penalties he faced. Any erroneous explanation of the penalty for violating the terms of an early release does not change the fact that the trial court correctly informed Clark that he faced a maximum penalty of life in prison.

{¶ 54} In determining that the trial court substantially complied with Crim.R. 11 and that Clark knowingly, voluntarily, and intelligently entered his plea notwithstanding the court's erroneous explanation of life imprisonment with the possibility of parole, the court of appeals relied upon the decision of the Fourth District Court of Appeals in *State v. Hamilton*, Hocking App. No. 5CA4, 2005-Ohio-5450, 2005 WL 2592964. *State v. Clark*, Ashtabula App. No. 2006–A–0004, 2007-Ohio-1780, 2007 WL 1113968, ¶ 24.

{¶ 55} In *Hamilton*, the defendant appealed his conviction for aggravated murder, alleging that his guilty plea was invalid because the trial court had incorrectly informed him that he would be subject to postrelease control when, in fact, he was subject to parole. Because the trial court correctly advised him that the maximum penalty for aggravated murder was life imprisonment with parole eligibility after 20 years, the court of appeals concluded that the trial court's subsequent references to both parole eligibility and postrelease control did not render the guilty plea invalid. *Hamilton* at ¶ 1. The court reasoned that nothing in the trial court's discussion of postrelease control conveyed that Hamilton had a right to early release or would be subject to anything less than the maximum penalty for the offense: life imprisonment. Id. at ¶ 17–18.

{¶ 56} Here, as in *Hamilton*, the record demonstrates that Clark knew that the maximum penalty for aggravated murder was life in prison with either no parole or a possibility for, not a right to, early release.

{¶ 57} Even if we assume, arguendo, that the trial court failed to substantially comply with Crim.R. 11 by advising Clark of the maximum penalty for his offense, that failure will not invalidate his guilty plea unless he suffered prejudice. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12, citing *State v. Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." Id. Therefore, Clark bore the burden of proving that he relied upon the trial court's erroneous explanation of parole in deciding to enter his guilty plea.

{¶ 58} The court of appeals considered the issues of reliance and prejudice, stating: "[T]here is no evidence that would suggest [that] Clark's belief that he would be subject to post release control, assuming he would be released after twenty-eight years, induced him to enter his plea of guilty. On the contrary, the prosecution possessed a video-taped statement, two recorded statements, and an oral statement in which Clark fully admitted his culpability for Carolyn's death. Clark's motion to have these confessions suppressed was denied. Moreover, Clark had been determined competent to stand trial and to have known the wrongfulness of his acts. As Clark's guilt was not reasonably in question, the only issue for the court was whether Clark's sentence would be life imprisonment or life imprisonment with the possibility of parole." *State v. Clark*, Ashtabula App. No. 2006–A–0004, 2007-Ohio-1780, 2007 WL 1113968, ¶ 28.

{¶ 59} The trial court substantially complied with Crim.R. 11 by advising Clark of the maximum penalty for aggravated murder, and the record does not demonstrate that Clark relied upon the trial court's erroneous explanation of the possible sanctions for a violation of parole when he entered his plea. For these reasons, I would affirm the decision of the court of appeals and hold that Clark knowingly, intelligently, and voluntarily entered his guilty plea. Accordingly, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

---

LANZINGER, J., dissenting.

{¶ 60} I respectfully dissent. I would hold, as did the court of appeals, that although the court imparted erroneous information, Clark understood that his *maximum* penalty was a *life sentence*. He also understood that there was a possibility of parole. Even though the trial court made confusing statements about postrelease control, these statements did not misinform Clark about his maximum term, which was life in prison. At worst, Clark was told incorrectly

that he faced an additional prison term if he was released sometime during his life sentence.

{¶ 61} Clark claims that by inaccurately saying that he could be subject to postrelease control, the trial court failed to comply with Crim.R. 11(C)(2)(a), which states that a court shall not accept a guilty plea without "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of *the maximum penalty involved*." (Emphasis added.)

{¶ 62} It is puzzling that the majority confuses the judge's inaccurate comments about *potential* terms of release with the court's correct information about Clark's maximum sentence, a life term. Any lack of clarity about "how the sentence would end and what sanctions Clark would face upon release from prison" does not affect the maximum penalty. Clark was told that his maximum sentence is a life term; any misinformation given to him about how his sentence may end sooner and what sanctions he would face upon release from prison does not change that. The court met its obligation pursuant to Crim.R. 11(C)(2)(a) by correctly informing Clark of his maximum sentence.

{¶ 63} The majority relies on a footnote in *State v. Griggs,* 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19, fn. 2, which cites *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, to urge trial courts "to avoid committing error by literally complying with Crim.R. 11." This "strict compliance" standard tells the court to follow the text of the rule word-for-word. The constitutional rights listed at Crim.R. 11(C)(2)(c) do call for such strict or "literal" compliance. A judge may also comply literally with Crim.R. 11(C)(2)(b) by giving a defendant information on the effect of a plea. See *State v. Jones,* 116 Ohio St.3d 211, 2007-Ohio-6093, 877 N.E.2d 677, ¶ 25 ("to satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)"). But the requirement of Crim.R. 11(C)(2)(a) is different, because it does not specifically set forth instructions for a court to follow word-for-word. Crim.R. 11(C)(2)(a) does not specifically tell a judge how to explain the "nature of the charge" and the "maximum penalty"—the judge must look to the statutes themselves to discover what information applies to a particular case.

{¶ 64} Because of the complexity of the criminal statutes with which the rule works, the requirements of the rule vary widely from case to case, and error is not necessarily easily avoidable. Every criminal case is unique. A single case may involve a variety of counts—felonies, misdemeanors, specifications, each of which may have different consequences. When counts are considered together, more severe penalties are possible. Thus, in explaining and making sure that a defendant understands the nature of the charge, the maximum penalty, the effect of the plea, and the constitutional rights that are being waived, the trial court

must do more than merely recite particular words into the record. I submit that urging judges toward "literal compliance" with Crim.R. 11 is not particularly helpful when their primary goal is to ensure that defendants understand the consequences of entering pleas. See *Boykin v. Alabama* (1969), 395 U.S. 238, 243–244, 89 S.Ct. 1709, 23 L.Ed.2d 274. Before accepting a plea and during the colloquy a trial judge is not expected to simply read from a prepared text, but to converse intelligibly with a human being.

{¶ 65} Unquestionably the trial judge must convey accurate information so that the defendant can understand the consequences of his or her decision and enter a valid plea. However, when the court errs by omitting information or giving it incorrectly, but the error does not prejudice the defendant, the plea need not be vacated. Except for the single recent case of *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, in which the sentencing court failed to explain mandatory postrelease control, we have not automatically vacated a plea. Instead, we have upheld pleas using the standard of substantial compliance and the totality of the circumstances as developed in *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163. See *State v. Strawther* (1978), 56 Ohio St.2d 298, 10 O.O.3d 420, 383 N.E.2d 900; *State v. Billups* (1979), 57 Ohio St.2d 31, 11 O.O.3d 150, 385 N.E.2d 1308; *State v. Ballard* (1981), 66 Ohio St.2d 473, 20 O.O.3d 397, 423 N.E.2d 115; and *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474.

{¶ 66} I therefore agree that the court of appeals was expected to consider the issue of prejudice to Clark in light of the trial court's error. However, I disagree with the majority's statement that the court of appeals "did not reach a conclusion" on whether Clark was prejudiced. The court of appeals has already determined that there was no evidence that Clark had been induced to plead guilty by a belief that he would receive postrelease control after 28 years and that his guilt was not in question, since he had admitted guilt, and his motion to suppress the confessions had been denied. His competence to stand trial had been determined, as had his knowledge of the wrongfulness of his acts. The court of appeals concluded that "Clark cannot demonstrate prejudice by being misinformed about the possibility of post release control sanctions when such sanctions are not a possibility under any circumstances." *State v. Clark*, Ashtabula App. No. 2006–A–0004, 2007-Ohio-1780, 2007 WL 1113968, ¶ 28.

{¶ 67} Because the court of appeals accurately and adequately concluded that Clark was not prejudiced by the mistaken information given to him, I see no need for remand on that issue. Therefore, I dissent and would affirm the judgment of the Ashtabula County Court of Appeals.

LUNDBERG STRATTON, J., concurs in foregoing opinion.

Thomas L. Sartini, Ashtabula County Prosecuting Attorney, and Shelley M. Pratt, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, for appellant.