[Cite as *State v. Wilborn*, 2013-Ohio-5168.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25581 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-1638/1 |
| v. | : | |
| | : | |
| JAMES H. WILBORN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 22nd day of November, 2013.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JAMES C. STATON, Atty. Reg. #0068686, 5613 Brandt Pike, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, P.J.

{¶ 1}    Defendant-appellant James H. Wilborn appeals from his conviction and sentence, following a mid-trial, negotiated guilty plea, for several felony offenses. He contends that the

trial court erred by misadvising him, during the plea colloquy, that once he had completed the ten-year sentence stipulated as part of the plea agreement, he would not face possible incarceration in this case as a result of a violation of his post-release control conditions. We agree. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings.

## I. Wilborn Enters into a Plea Agreement During his Trial

{¶ 2}    Wilborn was charged in a seven-count indictment with the following offenses: (1) Aggravated Burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree; (2) Aggravated Burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; (3) Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; (4) Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree; (5) Kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the first degree; (6) Kidnapping (safe release), in violation of R.C. 2905.01(A)(2), a felony of the second degree; and (7) Having a Weapon While Under a Disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree. All of the counts except the last one included three-year firearm specifications.

{¶ 3}    A jury was impaneled to try the charges set forth in the indictment. Following a recess to allow the jury to view the scene, Wilborn and the State entered into a plea agreement whereby he would plead guilty to all of the charges and specifications, and his aggregate sentence would be ten years in prison. A plea colloquy ensued.

{¶ 4}    The trial court accepted Wilborn's plea. The trial court merged Counts 3, 4, 5, and 6 with Counts 1 and 2. The trial court sentenced Wilborn to four years on Counts 1 and 2,

and to 36 months on Count 7, and ordered those sentences to be served concurrently. The trial court ordered three-year terms for each of the firearm specifications to Counts 1 and 2, and ordered them to be served consecutively to one another and to the sentences on Counts 1, 2, and 7, for an aggregate prison sentence of ten years, consistent with the plea agreement.

{¶ 5}     From his conviction and sentence, Wilborn appeals.


**II.   The Trial Court Erred when it Mis-advised Wilborn that**

**his Guilty Plea Would Not Expose him to Additional Incarceration**

**in this Case for Violations of Post-Release Control Conditions**

{¶ 6}     Wilborn's First Assignment of Error is as follows:

THE TRIAL COURT ERRED TO THE DEFENDANT'S PREJUDICE BY MISINFORMING THE DEFENDANT OF THE MAXIMUM POSSIBLE PENALTY TO WHICH DEFENDANT WAS SUBMITTING HIMSELF UPON ENTERING A PLEA OF GUILTY THEREBY RENDERING HIS PLEA VOID.

{¶ 7}     The genesis of this appeal lies in an incorrect statement that the trial court made to Wilborn when he was tendering his guilty pleas in this case after a jury had been impaneled, and after the court was in recess for a jury view of the scene. The statement concerned the potential consequences of a violation of post-release control conditions. From our review of the entire transcript, it is apparent to us that the trial court, defense counsel, and the prosecutor were all acting in the utmost good faith. The statement at issue occurred during the following colloquy:

MR. LACHMAN [representing Wilborn]: Did you go over his post release

control requirements, Your Honor?

THE COURT: Oh, yes. I hope somebody put them on the sheet because I wasn't sure what they were. Can somebody give me that?

MS. MONTGOMERY [representing the State]: They should be on there. Each of the plea forms, Your Honor, what the mandatory PRC will be.

MR. LACHMAN: On the other side.

THE COURT: Oh, it's on this side?

MR. LACHMAN: Yeah, it's on that side.

THE COURT: I beg your pardon. I beg your pardon. You will be in this particular case as to these charges under a mandatory post release control of a period not to exceed five years. As much as this sentence is all concurrent, that will be the limit of it. It'll be five years across the board and after you're out, well you'll be under post release control. And that means that you could if you were convicted of some other crime during the time you're on post release control, sent back to prison and for the period of time that would result from whatever acts you committed while you were on post release control. *If you had served the full mandatory sentence, you're done. You don't have to worry about it.* But once you go on post release control, you expose yourself to the fact that during that give [sic] years, you commit another felony, it's going to happen to you and it will probably be bad. Because you'll get maxed. You understand that, sir?

THE DEFENDANT: Yeah.

THE COURT: Okay. So the idea is not to come back. * * * .

(Emphasis added.)

{¶ 8}   After Wilborn's pleas were accepted, but during the same proceeding, it appears that the trial court may have been about to revisit the issue of the consequences of a violation of post-release control, but got interrupted:

THE COURT: That is correct.  So maybe the underlying fact is that the ones [periods of post-release control] that are going to count, the ones are adding up for all the time, you'll be under five years mandatory post release control.  *And if anything happens* –

MR. FREEMAN [representing the State]: I'm sorry, Your Honor, I misspoke.  Even under Count VII of the Indictment, having weapons under disability, it's a mandatory three years post release control as opposed to the five years under –

THE COURT: Yeah, that's what I was going to get to.

(Emphasis added.)

{¶ 9}   The trial court then pronounced sentence, in accordance with the plea agreement.  The trial court was then reminded by defense counsel that it needed to "go through post release control again, * * * , for the purposes of sentencing," and it did so.  But nothing was said at this time about the consequences of violating conditions of post-release control.

{¶ 10}  Two days later, in the morning, Wilborn again appeared in the trial court.  The trial court corrected a few minor mistakes in the sentence it had pronounced, at least one of which involved post-release control, but nothing was said about the consequences of violating conditions of post-release control.  After a recess, later that same morning, Wilborn was once

more before the trial court for a couple more minor corrections to the sentence, one of which again involved post-release control, but again, nothing was said about the consequences of violating conditions of post-release control.

{¶ 11} Each of the plea forms that Wilborn signed in open court when his plea was tendered and accepted included the following statement on the first page, above his signature:

> **X Mandatory/ ☐ Non-Mandatory Post-release control** for a period of  5   (3 or 5) years and **prison term(s)** up to the period of post-release control or one-half the total term(s) originally imposed, whichever is greater, for violations of post-release control.

(Bolding in original.)

{¶ 12} The sentencing entry includes the following paragraph:

> Should the defendant violate any post-release control sanction or any law, the adult parole board may impose a more restrictive sanction. The parole board may increase the length of the post-release control. The parole board also could impose up to an additional nine (9) months prison term for each violation for a total of up to fifty percent (50%) of the original sentence imposed by the court. If the violation of the sanction is a felony, in addition to being prosecuted and sentenced for the new felony, the defendant may receive from the court a prison term for the violation of the post-release control itself.

{¶ 13} Wilborn cites Crim.R. 11(C)(2)(a), which provides as follows:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first

addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

{¶ 14} Wilborn cites *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, and the State cites *State v. Gulley*, 1st Dist. Hamilton No. C-040675, 2005-Ohio-4592, ¶ 16, for the proposition that for purposes of the requirements of Crim.R. 11(C)(2)(a), the maximum penalty for an offense includes the incarceration that may result from a violation of conditions of post-release control. We agree with this proposition.

{¶ 15} Wilborn contends, and the State does not dispute, that the trial court did not comply with Crim.R. 11(C)(2)(a) by "not fully advising Wilborn of the consequences that could befall him should he fail to comply with the terms and conditions of post release control."[1] The State argues that the trial court partially complied with Crim.R. 11 when it "correctly informed Wilborn that he was subject to a mandatory term of five years post-release control and that if he committed a new felony while on post-release control, the consequences could be severe."[2]

{¶ 16} We see two problems with the State's argument. The first is that a reasonable construction of the trial court's statement to Wilborn during the plea colloquy is that although he would not be subject to additional incarceration in this case as a consequence of a violation of post-release control conditions, he might face the wrath of the trial court that would sentence him

---

[1] State's brief, p.4.

[2] State's brief, p.4.

for the separate felony conviction constituting the violation.

{¶ 17}  The second problem we see with the State's argument is that in this case the trial court did not merely omit mention of the additional incarceration in this case that Wilborn might suffer as a result of a violation of post-release control, it affirmatively mis-stated that there could be no additional incarceration in this case, once Wilborn completed his mandatory ten-year sentence.  In a different context, but one that also involved post-release control, we have distinguished an omission in a trial court's notification, at sentencing, concerning post-release control, from a mis-statement contained in a trial court's notification.  *State v. Ramey*, 2d Dist. Montgomery No. 24944, 2012-Ohio-3978, ¶ 12-13.  An affirmative mis-statement by the trial court is more likely to mislead a defendant, since it may override correct information the defendant may have obtained from other sources.  A defendant may reasonably conclude that the trial court is a more authoritative source of information relating to the consequences of his plea than any other source.

{¶ 18}  Similarly, in the case before us, the plea forms Wilborn signed, at the plea hearing, contained an abbreviated, but generally correct, recitation of the incarceration consequences that Wilborn might suffer as a result of violating conditions of post-release control.  But the trial court indicated, on the record, that it was reviewing the same written plea forms that Wilborn had in front of him, and told Wilborn that once he had served the mandatory ten-year prison term, "you're done.  You don't have to worry about it."  Again, a defendant in Wilborn's position may reasonably accept as authoritative a trial court's explanation of the written legal verbiage with which the defendant is confronted.

{¶ 19}  The State argues that the trial court substantially complied with its duty to advise

Wilborn of the consequences of a violation of the conditions of post-release control, and therefore Wilborn must demonstrate on the record that he was prejudiced as a result of the trial court's failure to comply fully; i.e., he must demonstrate that he would not have pled guilty but for the trial court's failure. We reject the predicate for this argument. We conclude that the trial court did not substantially comply with its duty under Crim.R. 11(C)(2)(a), when it advised Wilborn, in effect, that once he had completed his mandatory ten-year sentence (before which there could not, of course, be a violation of post-release control conditions) he was not exposed to further incarceration, in this case, as a result of violating post-release control conditions.

{¶ 20} The State notes in its brief that Wilborn was on post-release control for a prior conviction when he committed these offenses, so he must have known what the consequences of violating post-release control conditions would be. The problem with this argument is that there are different terms and types of post-release control and, more importantly, the criminal sentencing laws are constantly changing, as a result of new statutory enactments and new case law. Thus, even if Wilborn could be charged with knowledge of the consequences for violating conditions of the post-release control to which he had previously been subject, it does not follow that he can be charged with knowledge of the consequences for violating the post-release control conditions to which he would be subject as the result of his sentence in this case.

{¶ 21} Wilborn's First Assignment of Error is sustained.

### III. Wilborn's Second Assignment of Error is Moot

{¶ 22} Wilborn's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S

PREJUDICE BY FAILING TO SET FORTH THE MANDATORY POST RELEASE CONTROL TERMS AND SANCTIONS AS REQUIRED BY ORC2929.19(B)(2)(e) RENDERING HIS SENTENCE VOID.

{¶ 23} In view of our disposition of Wilborn's First Assignment of Error, his Second Assignment of Error is moot. It is therefore overruled.


## IV. Conclusion

{¶ 24} Wilborn's First Assignment of Error having been sustained, and his Second Assignment of Error having been overruled as moot, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .


DONOVAN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck
Andrew T. French
James C. Staton
Hon. Timothy N. O'Connell