[Cite as *State v. Thompson*, 2019-Ohio-4371.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27962 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3478/1 |
| | : | |
| KHADIJAH THOMPSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of October, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

THOMAS W. KIDD JR., Atty. Reg. No. 0066359, 8913 Cincinnati-Dayton Road, West Chester, Ohio 45069
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Khadijah Thompson appeals from the trial court's March 26, 2018 judgment entry of conviction, following her guilty pleas to felonious assault (serious harm), in violation of R.C. 2903.11(A)(1), a felony of the second degree (Count I), and felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), also a felony of the second degree (Count II). The court merged Counts I and II, and the State elected to proceed to sentencing on Count II. The court imposed a prison term of five years. Because the trial court did not properly impose post-release control as part of Thompson's sentence, the matter is hereby reversed in part and remanded for resentencing limited to the proper imposition of post-release control. In all other respects, the judgment of the trial court is affirmed.

**{¶ 2}** Thompson was indicted on November 9, 2017, and she entered her guilty pleas on January 16, 2018. The court indicated on the record that in exchange for her pleas, the State would not pursue the potential charge of attempted murder. The court indicated that no agreement was reached regarding sentencing.

**{¶ 3}** After the State read the charges into the record, Thompson indicated her understanding thereof. The court advised her that "both of these charges are felonies of the second degree and, generally speaking, Ms. Thompson, a felony of the second degree could carry a fine of up to $15,000 plus court costs, restitution and a potential prison term of anywhere from two to eight years." Thompson indicated her understanding. The court advised Thompson that Count II required a mandatory driver's license suspension, that she was eligible for community control sanctions for each offense for up to five years, and that one of the sanctions could be local jail time of up to 180 days. Thompson indicated that no one had promised her community control

sanctions. The court advised Thompson that if she were to violate community control, she could face two to eight years in prison.

{¶ 4} The court indicated to Thompson that, because Counts I and II were felonies of the second degree, there was "a presumption in the law that the punishment should be a prison sentence"; in order to overcome that presumption, the court would have to find that community control "would adequately punish the defendant and protect the public from future crime," and that "community control would not demean the seriousness of the crime that was committed." Thompson indicated her understanding regarding the presumption of a prison term.

{¶ 5} The court further advised Thompson that a guilty plea was a complete admission of guilt, that her offenses would merge for sentencing, and that the State had elected to proceed on Count II. Thompson indicated that she understood.

{¶ 6} The court thoroughly advised Thompson that "you're giving up rights that you have under the Constitution," namely a right to a trial by jury, and to "require the prosecutor to convince all 12 members of that jury * * * beyond a reasonable doubt, that you are guilty." The court advised Thompson that she would have the right to confront witnesses at trial by means of cross-examination, and that she would have the right to have the court subpoena witnesses in support of her defense. Finally, the court advised Thompson that she had a Fifth Amendment right to "be silent in the trial itself." Thompson indicated that she understood the constitutional rights she would give up by pleading guilty.

{¶ 7} The following exchange occurred:

> THE COURT: * * * Now, I'm going to hand this plea form back to you

just to make sure you know what's on this plea form before you sign it.

(Pause)

THE COURT: So the record will reflect that Ms. Thompson has signed the plea form. Did you actually review this plea form?

DEFENDANT THOMPSON: Yes.

THE COURT: Do you have any questions about what's on this plea form?

DEFENDANT THOMPSON: No, Your Honor.

THE COURT: So now, Ms. Thompson, the Court will ask you how do you plead to Count I, felonious assault-serious harm and also to Count II, felonious assault-deadly weapon, both being felonies of the second degree? * * *

DEFENDANT: Guilty.

THE COURT: And are you entering your pleas of guilty voluntarily and of your own free will?

DEFENDANT THOMPSON: Yes.

THE COURT: So the Court finds that Ms. Thompson has voluntarily entered her pleas of guilty. She has knowingly, intelligently and voluntarily waived her constitutional rights; she understands the nature of both charges, the maximum penalties that she will face; she * * * understands that she is eligible for community control sanctions but she knows that's not promised or guaranteed; she understands the effect of her plea of guilty and she knows the court is going to find her guilty of both charges but because

those offenses merge, she also knows she'll ultimately be sentenced on the Count II, felonious assault-deadly weapon count.

{¶ 8} Thompson's plea form stated that she was subject to mandatory post-release control for a period of three years and "prison term(s) up to the period of post-release control or one-half the total term(s) originally imposed, whichever is greater, for violations of post-release control."

{¶ 9} The trial court ordered a presentence investigation. At sentencing, the court indicated that it was significant that Thompson repeatedly had run over the victim herein, a minor, with her car, causing severe injuries, including broken facial bones, a punctured lung, and several rib fractures requiring surgery. It was also significant to the court that Thompson did not have a prior felony record. The court indicated that it had considered the factors set forth in R.C. 2929.11 and R.C. 2929.12 in imposing sentence and that the presumption of a prison sentence had not been overcome. The court advised Thompson at sentencing that she was subject to five years of post-release control. The trial court's judgment entry of conviction also stated that Thompson would be "supervised by the Parole Board for a period of **FIVE (5)** years Post-Release Control after [her] release from imprisonment."

{¶ 10} Initial appointed counsel for Thompson filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). As a potential assignment of error, counsel suggested that the trial court had failed to comply with Crim.R. 11 in accepting Thompson's pleas.

{¶ 11} On August 24, 2018, this Court advised Thompson that counsel had filed an *Anders* brief on her behalf and granted her 60 days to file a pro se brief raising any

errors for this Court's review. None was received.

{¶ 12} On January 10, 2019, this Court issued a Decision and Entry, which stated:

> * * * Although the plea form included a reference to three years mandatory post release control, the trial court did not include this information orally when advising Thompson of the consequences of her plea. This would encompass oral advisement of all potential penalties, including this mandatory post release supervision. Having found an arguably meritorious issue for counsel to brief, we reject the *Anders* brief and hereby appoint new counsel to raise this issue on appeal along with any other assignment identified by counsel.

{¶ 13} With newly-appointed counsel, Thompson raises two assignments of error. Thompson's first assignment of error is as follows:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO ADVISE AT THE PLEA HEARING REGARDING POST RELEASE CONTROL.

{¶ 14} As this Court has noted:

> In order to be constitutionally valid and comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "In order for a plea to be knowing, intelligent, and voluntary, the trial court must comply with Crim.R. 11(C)." (Citation omitted.) *State v. Russell,*

2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6. "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. "By following this rule, a court ensures that the plea is knowing, intelligent, and voluntary." *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12, citing *State v. Redavide*, 2d Dist. Montgomery No. 26070, 2015-Ohio-3056, ¶ 12.

Pursuant to Crim.R. 11(C)(2)(a), the court must determine "that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." When post-release control applies, the trial court is required to inform the defendant of its applicability due to this rule. *State v. Threats*, 2016-Ohio-8478, 78 N.E.3d 211, ¶ 21 (7th Dist.), citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 7-10, 22.

Unlike the advisements required in Crim.R. 11(C)(2)(c), which involve constitutional rights and necessitate strict compliance by the trial court, the non-constitutional advisements in Crim.R. 11(C)(2)(a) only require substantial compliance. *Cole* at ¶ 12, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Under the substantial compliance standard, "a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively

understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, quoting *Nero* at 108.

If there is no substantial compliance with regard to a non-constitutional right, the reviewing court is to ascertain whether there was partial compliance or a total failure to comply with the rule. *Id.* at ¶ 32. If there is partial compliance, the plea cannot be vacated unless the defendant shows that he was prejudiced. *Id.* "The test for prejudice is 'whether the plea would have otherwise been made.' " *Id.*, quoting *Nero* at 108. (Other citation omitted.) "If the trial judge completely failed to comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated." *Id.*, citing *Sarkozy* at paragraph two of the syllabus. " 'A complete failure to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *Sarkozy* at ¶ 22.

*State v. Hastings*, 2d Dist. Montgomery Nos. 27212 and 27213, 2018-Ohio-422, ¶ 14-17.

**{¶ 15}** As noted above, the record reflects that the trial court did not advise Thompson regarding post-release control at the plea hearing, although her plea form correctly stated that she was subject to a period of three years of post-release control and set forth the consequences of violating post-release control.

**{¶ 16}** The State directs our attention to *State v. Camp*, 2d Dist. Clark No. 2017-CA-73, 2018-Ohio-2964. Therein, as here, the trial court did not advise Camp regarding post-release control at the plea hearing, but the plea form accurately set forth post-release control and the consequences for violating post-release control. This Court held:

* * * [W]e conclude that the trial court did not fail to comply, rather substantially complied, with Crim.R. 11(C)(2)(a) by inquiring of Camp if he signed the plea form, reviewed it with counsel, and understood its contents. The plea form accurately indicated that Camp was subject to post-release control for a mandatory period of five years[.] * * * In response to the trial court's inquiry, Camp expressly advised the court that he understood the foregoing contents of his plea form at his plea hearing, and we conclude that the totality of the circumstances indicates that Camp knew about post-release control and the possible sanctions for violating post-release control.

Significantly, Camp does not argue that he would not have entered his guilty pleas if he had been orally advised regarding post-release control or of the consequences of violating post-release control, and we conclude that he fails to demonstrate a prejudicial effect. In other words, Crim.R. 11 does not provide a basis for vacating Camp's guilty pleas. Since substantial compliance by the trial court is demonstrated, Camp's sole assignment of error is overruled. * * *

{¶ 17} Thompson asserts that "unlike in [*Camp*] * * *, this is not a matter of the trial court substantially complying due to a correct plea form," because in Thompson's case, the plea form provision regarding post-release control incorrectly stated that mandatory post-release control was for three years, "not for the eventually imposed five years." Thompson directs our attention to *Sarkozy*.

{¶ 18} In *Camp*, this Court noted that the Tenth District, in *State v. Williams*, 10th Dist. Franklin No. 10AP-1135, 2011-Ohio-6231, ¶ 40, determined that " 'the *Sarkozy*

decision does not indicate there were any references to post-release control at all during the plea colloquy, not even a plea form that set forth the applicable post-release control information, as is present in the instant case.' "

{¶ 19} R.C 2967.28(B)(2) provides that a sentence to a prison term for a felony of the second degree that is not a felony sex offense "shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment" for a period of *three* years.

{¶ 20} As in *Camp*, we find that substantial compliance with Crim.R. 11(C)(2)(a) herein is demonstrated. The court returned the plea form to Thompson so that she could be certain about "what's on this plea form" before she signed it. There was a pause in the proceedings, after which the court indicated that Thompson had signed the form. Thompson, represented by counsel, advised the court that she had reviewed the plea form, had no questions regarding the plea form, and that she entered her pleas voluntarily. We note that she acknowledges in her brief that the plea form "provided a written advisement of three years of mandatory post-release control." Finally, as in *Camp*, Thompson does not assert that she would not have entered her pleas if she had been orally advised regarding post-release control or the consequences of violating post-release control, and she fails to demonstrate a prejudicial effect. We conclude that Crim.R. 11 does not provide a basis for vacating Thompson's plea. Thompson's first assignment of error is overruled.

{¶ 21} Thompson's second assignment of error is as follows:

THE TRIAL COURT ERRED BY IMPOSING A FIVE YEAR MANDATORY TERM OF POST-RELEASE CONTROL.

{¶ 22} As this Court recently noted:

> If a defendant has committed an offense subject to post-release control under R.C. 2967.28, the trial court must notify the defendant at sentencing of the postrelease control requirement and the consequences if the defendant violates post-release control. R.C. 2929.19; *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 18. It is well-established that when a judge fails to impose the required postrelease control as part of a defendant's sentence, "that *part* of the sentence is void and must be set aside." (Emphasis sic.) *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26; *see also State v. Holdcroft*, 137 Ohio St.3d 526, 2013-Ohio-5014, 1 N.E.3d 382, ¶ 7. The improper post-release control sanction "may be reviewed at any time, on direct appeal or by collateral attack." *Fischer* at ¶ 27. * * *

> * * *

> Crim.R. 43(A)(1) requires a defendant's physical presence at every stage of the criminal proceeding, including the imposition of sentence. It is well established that when post-release control is required but not properly imposed, the trial court must conduct a limited resentencing hearing to properly impose post-release control. *See Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at paragraph two of the syllabus. ("The new sentencing hearing to which an offender is entitled under *State v. Bezak* is limited to proper imposition of postrelease control.").

*State v. Hibbler,* 2d Dist. Clark No. 2019-CA-19, 2019-Ohio-3689, ¶ 12, 19.

**{¶ 23}** The trial court improperly sentenced Thompson to five years of post-release control, and since she is still serving her sentence, the court's imposition of five years of post-release control will be reversed. Thompson's second assignment of error is sustained.

**{¶ 24}** The trial court's judgment is reversed with respect to the imposition of post-release control, and the matter is remanded for resentencing to the appropriate three years of post-release control. In all other respects, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Thomas W. Kidd, Jr.
Mary E. Montgomery