[Cite as *State v. West*, 2012-Ohio-2758.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.   11 MA 33 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| KEVIN WEST, | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                   Court, Case No. 08CR1007.


JUDGMENT:                          Affirmed and Modified.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Paul Gains
                                   Prosecuting attorney
                                   Attorney Ralph Rivera
                                   Assistant Prosecuting Attorney
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio  44503


For Defendant-Appellant:           Attorney John Laczko
                                   3685 Stutz Drive, Suite 100
                                   Canfield, Ohio  44406


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                   Dated: June 13, 2012

VUKOVICH, J.

{¶1}   Defendant-appellant Kevin West appeals from his conviction of aggravated murder with a firearm specification entered in the Mahoning County Common Pleas Court.   On appeal, he contends that the court erred in failing to suppress the identification of appellant by three witnesses from a photographic array, which he claims was unduly suggestive and resulted in unreliable identifications.   On this topic, he also complains that counsel was ineffective for failing to call these three witnesses to testify at the suppression hearing where the state called only the detective.

{¶2}   Appellant then argues that the verdict was contrary to the manifest weight of the evidence.   Finally, he points out that the court erred in imposing post-release control for aggravated murder since parole, rather than post-release control, applies to this offense.   For the following reasons, appellant's conviction and the main portion of his sentence are upheld.   However, the sentence is modified to eliminate the reference to post-release control as aggravated murder is an unclassified felony subject to parole rather than post-release control.

## STATEMENT OF THE CASE

{¶3}   In August of 2008, appellant was indicted for aggravated murder for purposely causing the death of Delbert Jones with prior calculation and design.   See R.C. 2903.01(A).   As it was a shooting, the indictment contained a firearm specification.   R.C. 2941.145(A). Appellant filed a motion to suppress the identifications made by three witnesses from photographic arrays.

{¶4}   The detective testified at the motion hearing that he did not make any suggestions to the witnesses about the photographs and that the witnesses asked no questions about the photographs.   He noted that he gave each witness a lineup containing the same photographs but had the computer randomly place the photographs in a different position in each lineup, ensuring that the witnesses could not influence each other by disclosing which number they picked.

**{¶5}** The court denied appellant's suppression motion, finding that the array was not unduly suggestive. The court noted that all six photographs contained African-Americans with similar facial features. The case was then tried to a jury.

**{¶6}** The testimony established that the victim, Delbert Jones, was at home with his children's mother, Samantha Miller. When their friends, Latuwanda Scott and Diane Langston, pulled up to the curb in front of the house, the victim and Ms. Miller went out to speak to them. A vehicle drove past. Ms. Miller testified that prior to that day, she had never seen the driver whom the victim called "Kevin." (Tr. 333-334, 344).

**{¶7}** Ms. Scott testified that the victim said to her, "there's your cousin riding past * * * Kevin." Ms. Scott also explained that appellant, Kevin West, is her cousin's brother. (Tr. 380, 382). Within minutes, a young man started walking down the street toward the victim from the direction the vehicle had gone. (Tr. 361). Ms. Langston testified that the victim noticed him and said, "here go your cousin, Kevin." (Tr. 415).

**{¶8}** At that point, shots rang out, and the man later started chasing the victim around the vehicle and between the houses with gunshots continuing. (Tr. 334, 339, 385-386). The victim soon collapsed while the gunman stood over him and fired more shots into his body. (Tr. 337-339, 389, 415, 418).

**{¶9}** Ms. Scott testified that she recognized appellant as he ran past her car chasing the victim; she also saw appellant stand over the collapsed victim and shoot. (Tr. 384). At that point, she sped away from the scene and soon stopped at a house on another street when she noticed her aunt's car. While discussing the shooting, she then saw appellant jump off his uncle's porch a couple doors down and leave. (Tr. 391). She said he was sweating and wearing the same clothes as the shooter. (Tr. 392, 400-401). She picked him out of a photographic lineup that evening.

**{¶10}** Ms. Langston testified that she also realized the shooter was appellant, whom she has known since she was a child, after he chased the victim behind the car in which she was a passenger. (Tr. 416). She too saw him jump off the porch later. (Tr. 420). She picked appellant's photograph out of a lineup as well. (Tr. 421).

{¶11} Ms. Miller testified that when she heard the shots and saw people running between the houses, she ran into the house to call 911. (Tr. 335-336). She looked out of her window and saw the victim on the ground with someone standing over him pointing down. When shown a photographic lineup, she identified appellant as the person she saw standing over the victim and the person who had driven by just before the shooting. (Tr. 355-356, 402).

{¶12} The victim's next-door neighbor came forward for the first time. He identified appellant as the young man he saw chasing the victim around his house and then emptying a gun into the collapsed victim. (Tr. 516, 519). He explained he initially refused to speak to police because of the large crowd that had gathered at the scene. He stated that he did not want involved thereafter out of concern for his children and grandchildren. (Tr. 521).

{¶13} A police officer testified that they found six shell casings at the scene. (Tr. 497). The victim had been shot five times. Two spent slugs were found under his body, confirming the witnesses' testimony he was shot after he collapsed. It was disclosed that one of the bullets had the victim's initials carved into it.

{¶14} The jury found appellant guilty as charged. On February 22, 2011, the court sentenced appellant to thirty years to life for aggravated murder consecutive to three years for the firearm specification. The court also purported to impose five years of post-release control. Appellant filed a timely notice of appeal.

<u>ASSIGNMENTS OF ERROR NUMBERS ONE & TWO</u>

{¶15} Appellant sets forth four assignments of error, the first and second of which contend:

{¶16} "APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ABUSED ITS DISCRETION AND OVERRULED HIS MOTION TO SUPPRESS THE PRETRIAL IDENTIFICATION OF APPELLANT MADE BY THREE (3) WITNESSES AS BEING IMPERMISSIBLY SUBJECTIVE AND UNFAIR."

{¶17} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTE WHEN APPELLANT'S TRIAL COUNSEL FAILED TO

PRESENT THE ALLEGED EYEWITNESSES TESTIMONY OR ANY OTHER EVIDENCE AT THE APPELLANT'S HEARING ON HIS MOTION TO SUPPRESS PRETRIAL IDENTIFICATION IN ORDER TO ESTABLISH THAT THE IDENTIFICATION PROCEDURES WERE IMPERSMISSIBLY SUGGESTIVE AND UNFAIR."

**{¶18}** When a witness has been presented with a suspect before trial, due process requires a court to suppress the identification if the presentation was unnecessarily suggestive of the suspect's guilt *and* the identification was unreliable under all of the circumstances.  *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992), citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Both parts of the test must be satisfied by a defendant challenging a lineup.  *See id.* Thus, if the presentation was not unduly suggestive, the court need not proceed any further in the test.  *State v. Gross*, 97 Ohio St.3d 121, 2002–Ohio–5524, 776 N.E.2d 1061, ¶ 19; *State v. Murphy*, 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001).

**{¶19}** Likewise, even if the presentation was unnecessarily suggestive, the identification can still stand if it is reliable under the totality of the circumstances; it is unreliable if there is a very substantial likelihood of irreparable misidentification. *Waddy,* 63 Ohio St.3d at 438-439.  Factors determining the degree of reliability include:  the opportunity of the witness to view the perpetrator during the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness at the presentation, and the length of time between the crime and the presentation.  *Id.* at 438.

**{¶20}** Appellant states that the photographic arrays used in this case were unnecessarily suggestive.  First, he claims that appellant's photograph has a different framing and background.

**{¶21}** However, all six photographs have a light blue background, standard for the Ohio Bureau of Motor Vehicles, which was the database used by the detective for the photographs.  A couple photographs appear to have some white in the blue. (Supp.Tr. 24-25).  This seems to be a result of the printing process or a reflection, but this is not suggestive in any way.  And, appellant's is not one of these photographs.

Nor is appellant's photograph the one with the sharpest quality. *See generally State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996) (photographs in lineup need not be nearly identical).

**{¶22}** As for framing, there is nothing of significance distinguishing one photograph from another. Appellant is concerned with a minor feature whereby five photographs (including appellant's) have a thin black line (frame) around the top and left side but not on the right side, whereas number four in State's Exhibit 39 has a black line on the right side as well. This is barely noticeable and even if the extra line makes the photograph distinguishable, this was not appellant's photograph. Thus, the array was not unduly suggestive of appellant due to background or framing.

**{¶23}** Appellant next argues that the array was unnecessarily suggestive because he has no facial hair in the photograph but other members in the array do have facial hair. However, the detective testified at the suppression hearing that he only noticed facial hair on two of the panel members. The detective also explained that he would not have used a person with pronounced facial hair. As he noted, any facial hair on the members of the array was so slight that it could barely be seen in the photographs. (Supp. Tr. at 26). In fact, it seems that *appellant* may have some facial hair in his photograph. In any event, considering the miniscule amount of facial hair noticeable in any of the pictures and the fact that the witnesses did not mention whether the shooter had a perfectly clean-shaven face or a little bit of a growth, there is nothing suggestive about the varying degrees of shadow hair in the array.

**{¶24}** These are appellant's only appellate arguments regarding the trial court's decision finding that the array was not suggestive. In viewing the photographic array, there is no basis for this court to disturb the trial court's decision that the array was not unduly suggestive.

**{¶25}** Appellant's second assignment of error argues that if the array is unduly suggestive, then his counsel was ineffective for failing to subpoena the three eyewitnesses to testify at the suppression hearing to prove that the identification was unreliable under the totality of the circumstances. As we concluded that the array

was not suggestive, we need not proceed to the next stage of the test for invalidating identifications.  In any event, ineffective assistance is not demonstrated here.

**{¶26}** We review a claim of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Under this test, a reviewing court does not find counsel's performance ineffective unless the defendant can show his attorney's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.  *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), ¶ 1 of syllabus.

**{¶27}** In evaluating the claim of deficient performance, the reviewing court must be highly deferential to counsel's tactics.  *Strickland*, 466 U.S. at 689.  The court should not focus on what, in hindsight, may have been a more appropriate course of defense. *See State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689; *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

**{¶28}** As aforementioned, even if there is deficient performance, the defendant must also establish prejudice.  To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.  *Id.* at ¶ 2 of syllabus.  To establish that reasonable probability, the facts must be sufficient to undermine a court's confidence in the outcome.  *Strickland,* 466 U.S. at 694.

**{¶29}** Even if counsel's failure to call the eyewitnesses to the suppression hearing (or failure to question the detective on the reliability factors) constituted deficient performance, there is no indication of prejudice, considering the testimony presented at trial.  For instance, the witnesses made their original identification the same evening as the shooting.  *See Waddy,* 63 Ohio St.3d at 438.  The shooting occurred in broad daylight. *See id.*  Appellant walked down the middle of the street shooting, chased the victim right past the car until he collapsed from being shot, and then stood over him and shot him at least two more times.  The three female

witnesses expressed that they were paying rapt attention to the events as they were worried about their loved one. Two of the eyewitnesses to the murder knew appellant for years prior to the shooting and saw him wearing the same clothes as the shooter minutes after the shooting where he was seen sweating and jumping off a neighboring porch. Another eyewitness saw appellant drive by just prior to the shooting. The three female witnesses all heard appellant identified by name by the victim. None of the eyewitnesses expressed doubt in their identifications. *See id.*

**{¶30}** Contrary to one of appellant's arguments on reliability, it is not problematic that the detective rather than the witness may have placed the circle around appellant's photograph as the witness stated that the circle was placed there *after* she pointed out appellant's photograph. Notably, the witness signed her initials next to appellant's photograph. Moreover, although Ms. Miller did not initially see the shooter, she did testify that it was appellant whom she saw driving down the street just prior to the shooting and whom she saw standing over the victim after he collapsed. (Tr. 355-356). In any event, as we previously concluded that the array was not unduly suggestive, the reliability prong of the test for suppression is moot.

**{¶31}** Finally, appellant suggests that the three female witnesses should have been called to testify at the suppression hearing in order to show that detective's action during the array made it unduly suggestive. Yet, evidence outside the record as to what a witness may have disclosed is not a proper subject for appeal. *State v. Ishmail*, 54 Ohio St.2d 402, 406, 377 N.E.2d 500 (1978) (defendant cannot add matter to record that was not in the record before the trial court).

**{¶32}** Furthermore, appellant does not directly point to the testimony on the record that could have been presented at the suppression hearing to show suggestive procedures. The only claim he alludes to in his second assignment of error on how the testimony could have illuminated a fault in the procedure is his notation that Ms. Langston testified that the detective gave her the line-up and told her to pick out Kevin. (Tr. 421). However, because she had already informed the detective that Kevin West was the shooter, suggestiveness is not apparent even if the detective did use the accused's name. This did not create "a very substantial

likelihood of an irreparable misidentification." *See Waddy,* 63 Ohio St.3d at 438-439. In fact, a fourth eyewitness, who was never shown a lineup, identified appellant at trial as well.

{¶33} For all of these reasons, the identification was not the result of an unduly suggestive photographic array, and there is no indication of deficient performance or prejudice from counsel's failure to subpoena the three eyewitnesses for the suppression hearing. Appellant's first two assignments of error are thus overruled.

ASSIGNMENT OF ERROR NUMBER THREE

{¶34} Appellant's third assignment of error claims:

{¶35} "THE TRIAL COURT DENIED APPELLANT DUE PROCESS UNDER THE FOURTEENTH AMENDMENT DUE TO THE FACT HIS CONVICTIONS FOR AGGRAVATED MURDER AND A FIREARM SPECIFICATION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE JURY AND TRIAL COURT'S VERDICT WAS INCONSISTENT WITH THE EVIDENCE AND TESTIMONY PRESENTED AT TRIAL."

{¶36} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶37} A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. *Id.* at 389, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order

to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

{¶38} In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the jury who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E. 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 1212 (1967).

{¶39} Appellant criticizes the investigation, stating that it was hasty and inadequate with no fingerprinting or DNA analysis. However, a police officer opined that there was no reason to believe any fingerprints or DNA evidence would be found at the scene with the exception of the casings or shells. (Tr. 482). It was acknowledged that since the shooter removed the slug from the casing in order to carve the victim's initials into it, the shooter may have left behind trace evidence. (Tr. 494). However, the officer also explained that the heat generated when a shot is fired is known to burn off fingerprint and DNA evidence. (Tr. 482, 494, 499).

{¶40} Appellant also states that the verdict was contrary to the weight of the evidence because the testimony of the three female witnesses contained some inconsistencies and they were biased as they were close with the victim. He also urges that the testimony of Ms. Scott and Ms. Langston was not credible because they had crying children in the backseat of the vehicle and thus would not likely be paying attention to appellant after he had already passed the vehicle. Appellant states that either these witnesses did not report everything to the detective or his notes are inadequate because his notes did not mention what the shooter was wearing or that they saw appellant jump off a porch after the shooting. Appellant points out that another eyewitness did not pick anyone out of the lineup as she stated that it all happened too fast. (Tr. 368).

**{¶41}** As to the eyewitness testimony, the jury was in the best position to judge their credibility. The defense presented the testimony of an expert on eyewitness identifications, which the jury considered in making its credibility determination. Ms. Miller, Ms. Scott, and Ms. Langston all picked appellant's photograph out of a photographic lineup within hours of the shooting. They all stated that he was the one who stood over the victim and shot him. The latter two of these eyewitnesses knew appellant for years and recognized him during the shooting. Ms. Scott considers him a relative. Plus, Ms. Scott and Ms. Langston had another chance to see appellant in the same clothes as the shooter as he jumped off his uncle's porch a short distance from the shooting. That the detective's notes did not mention this event that occurred a few streets over from the shooting is not extraordinary and was a fact the jury considered. Finally, a neighbor identified appellant in court as the shooter.

**{¶42}** The jury had before it reasons to doubt the witnesses and reasons to believe them. It was their decision to weigh these reasons and decide whether the witnesses were credible. There are no extraordinary circumstances existing here tending to show a manifest miscarriage of justice. Thus, this assignment of error is overruled, and the jury verdict is upheld.

ASSIGNMENT OF ERROR NUMBER FOUR

**{¶43}** Appellant's fourth assignment of error provides:

**{¶44}** "THE TRIAL COURT VIOLATED DUE PROCESS AND COMMITTED PLAIN ERROR WHEN IT IMPOSED POST-RELEASE CONTROL FOR APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WITHOUT STATUTORY AUTHORITY TO DO SO PURSUANT TO R.C. 2967.28."

**{¶45}** Aggravated murder is an unclassified felony. R.C. 2901.02(A) (distinguishing aggravated murder {and murder} from a degreed felony). Post-release control does not apply to those convicted of such unclassified felonies. *State v. Clark*, 119 Ohio St.3d 239, 2008–Ohio–3748, 893 N.E.2d 462, ¶ 36 (an individual sentenced for aggravated murder is not subject to post-release control because that crime is an unclassified felony to which the post-release control statute does not

apply); R.C. 2967.28(B)-(C) (dealing with the imposition of post-release control for degreed offenses). Instead, parole applies if a person convicted of such an unclassified felony is released from prison before the maximum life term. *Id.*; R.C. 2967.13(A)(4) (relevant to those with parole eligibility after thirty years); R.C. 2929.03(A)(1)(d) (concerning life with parole eligibility after thirty years). Thus, as the state concedes, the trial court erred in sentencing appellant to five years of post-release control at the sentencing hearing and in the sentencing entry. *See* (Sent. Tr. 21); Feb. 22, 2011 J.E.

**{¶46}** The remaining issue for this court is the remedy. Appellant states that he is entitled to a new sentencing hearing, citing *State v. Crockett*, 7th Dist. No. 07MA233, 2009-Ohio-2874. The state urges that we should merely correct the sentence by eliminating post-release control.

**{¶47}** In *Crockett*, we relied on *Simpkins* and held that that court was not authorized to impose post-release control on a murder defendant, making the sentence unlawful and thus void. *Id.* at ¶ 9, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 21-22 (void sentence puts defendant in position as if no sentence had yet been entered). As such, we ordered a new sentencing hearing. *Id.*

**{¶48}** Since that time, the Supreme Court has changed its position on the effect of unauthorized post-release control on a sentence. *See State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-3250, 942 N.E.2d 332. The Court now holds that only the post-release control portion of the sentence is void but the remainder of the sentence remains in force. *Id.* at ¶ 26. Thus, the new sentencing hearing is limited to proper imposition of post-release control. *Id.* In fact, the Supreme Court further stated that "a remand is just one arrow in the quiver" pointing out that R.C. 2953.08(G)(2) provides that an appellate court can modify a sentence and thus can correct a defect in a sentence without a remand in certain cases. *Id.* at ¶ 29-30 (but remanding for imposition of post-release control because it was a required part of the sentence).

**{¶49}** Here, post-release control is not an authorized part of appellant's sentence. Thus, the post-release control portion of appellant's sentence is void.

However, the remainder of his sentence remains in force. Since, post-release control is not authorized for aggravated murder, there is no need to resentence him on the post-release control portion of the sentence. *See State v. Silguero*, 10th Dist. No. 11AP-274, 2011-Ohio-6293, ¶ 11, 16; *State v. Evans*, 8th Dist. No. 95692, 2011-Ohio-2153, ¶ 10. Instead, this court shall modify appellant's sentence so that any reference to post-release control is eliminated.

**{¶50}** For the foregoing reasons, the judgment of the trial court regarding appellant's conviction and the main portion of his sentence are upheld. However, appellant's sentence is hereby modified to eliminate the reference to post-release control as aggravated murder is an unclassified felony subject to parole rather than post-release control.

Donofrio, J., concurs.
DeGenaro, J., concurs.