[Cite as *State v. Watson*, 2014-Ohio-2373.]

STATE OF OHIO        )           IN THE COURT OF APPEALS
                      )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                   C.A. No.     26777

     Appellee

     v.                         APPEAL FROM JUDGMENT
                              ENTERED IN THE
DENNIS J. WATSON           COURT OF COMMON PLEAS
                              COUNTY OF SUMMIT, OHIO
     Appellant             CASE No.    CR 11 05 1219(A)

DECISION AND JOURNAL ENTRY

Dated: June 4, 2014

---

MOORE, Presiding Judge.

**{¶1}** Defendant-Appellant, Dennis Watson, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

**{¶2}** After his infant daughter sustained multiple injuries and died, Mr. Watson was indicted on two counts of felony murder, four counts of child endangering, and three counts of felonious assault. Within two months of his original indictment, Mr. Watson's first court-appointed attorney withdrew from representation, and the court appointed new counsel. Mr. Watson's new counsel, Thomas DiCaudo, represented Mr. Watson throughout the remainder of the proceedings. Shortly before trial, however, Attorney DiCaudo broke his leg and was unable to appear on Mr. Watson's behalf. Attorney DiCaudo asked his law partner, Reid Yoder, to consult with Mr. Watson and offer to act as substitute counsel. Attorney Yoder then consulted with Mr. Watson.

{¶3}    On the day the matter was set for trial, Attorney Yoder appeared with Mr. Watson and informed the court that Mr. Watson was prepared to plead guilty to one count of felony murder and one count of child endangering.  The State agreed to dismiss the remaining charges against Mr. Watson in exchange for his plea.  After the court conducted a colloquy on the record, Mr. Watson pleaded guilty to one count of felony murder and one count of child endangering. The court sentenced Mr. Watson to life in prison with parole eligibility after 15 years.

{¶4}    Mr. Watson now appeals from his convictions and raises two assignments of error for our review.

II.

{¶5}    Before turning to Mr. Watson's assignments of error, we note that the State's brief has drawn our attention to a post-release control error in Mr. Watson's sentencing entry. The sentencing entry provides that Mr. Watson "shall be supervised on post-release control by the Adult Parole Authority for a mandatory period of 5 years after being released from prison." (Emphasis omitted.)  Because felony murder is a special felony, Mr. Watson was not subject to post-release control on his felony murder conviction. *See State v. Wright*, 9th Dist. Summit No. 24610, 2009-Ohio-6081, ¶ 6.  He was, however, subject to post-release control on his child endangering conviction, a second-degree felony.  *See id.*  Second-degree felonies that are not felony sex offenses are only subject to three years of post-release control.  R.C. 2967.28(B)(2). Because Mr. Watson's sentencing entry imposes five years of post-release control upon him, that portion of his entry is void.  *See State v. Lollis*, 9th Dist. Summit No. 26607, 2014-Ohio-684, ¶ 42. *See also McGee v. McGee*, 168 Ohio App.3d 512, 2006-Ohio-4417, ¶ 7 (9th Dist.) ("A trial court has the inherent authority to set aside a void judgment sua sponte.").  The trial court's judgment is reversed, in part, on that basis and "the matter is remanded to the trial court so that

the sentencing entry may be corrected." *Lollis* at ¶ 42, quoting *State v. Brown*, 9th Dist. Wayne

No. 11CA0054, 2013-Ohio-2945, ¶ 62.

## ASSIGNMENT OF ERROR I

THE COURT ERRED IN NOT REQUIRING TRIAL COUNSEL TO BE PRESENT AT THE PLEA/SENTENCING HEARING AND THUS ALLOWING A "STAND IN" LAWYER TO APPEAR ON [MR.] WATSON'S BEHALF AT SAID HEARING AND IN REVIEW OF THE TOTALITY OF THE CIRCUMSTANCES IN THIS CASE, MR. WATSON'S PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY GIVEN PURSUANT TO THE REQUIREMENTS OF CRIM.R. 11(C)(2)[.]

{¶6} In his first assignment of error, Mr. Watson argues that his guilty plea must be vacated because it was not knowingly, voluntarily, and intelligently entered. We disagree.

{¶7} To be valid, "a plea [must be] knowingly, intelligently, and voluntarily made." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. Crim.R. 11(C) applies to guilty pleas entered in felony cases.

Under this rule, the trial judge may not accept a plea of guilty * * * without addressing the defendant personally and (1) "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing," (2) informing the defendant of the effect of the specific plea and that the court may proceed with judgment and sentencing after accepting it, and ensuring that the defendant understands these facts, and (3) informing the defendant that entering a plea of guilty * * * waives the constitutional rights to a jury trial, to confrontation, to compulsory process, and to the requirement of proof of guilt beyond a reasonable doubt and determining that the defendant understands that fact.

*Clark* at ¶ 27, quoting Crim.R. 11(C)(2)(a)-(c). Literal compliance with the rule is preferred, but not necessarily required. *Clark* at ¶ 29. "If a trial court fails to literally comply with Crim.R. 11, reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *Id.* at ¶ 30.

{¶8} If a trial judge fails to explain one of the constitutional rights set forth in Crim.R. 11(C)(2)(c), the defendant's plea is invalid. *Id.* at ¶ 31. Conversely, a trial court's failure to explain a nonconstitutional right triggers a substantial compliance analysis. *Id.* "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). If the court fails to substantially comply with Crim.R. 11 in explaining a nonconstitutional right, "reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Clark* at ¶ 32. Partial compliance will result in a vacation of the plea only if the defendant demonstrates prejudice as a result of the partial compliance. *Id.* A complete failure to comply with the rule will result in a vacation of the plea, regardless of whether prejudice has been shown. *Id.*

{¶9} The only particular portion of Crim.R. 11 that Mr. Watson cites on appeal is Crim.R. 11(C)(2)(b), which requires a court to inform a defendant of the effect of his guilty plea. Crim.R. 11(B)(1) defines the effect of a guilty plea as "a complete admission of the defendant's guilt." Mr. Watson argues that, due to the terminology the court employed, it failed to properly advise him of the effect of his plea in conformance with Crim.R. 11(C)(2)(b).

{¶10} During the plea colloquy, the following exchange took place:

THE COURT: You understand the allegations contained in the indictment and what the State is accusing you of doing?

[MR. WATSON]: Yes, ma'am.

THE COURT: And you understand if you plead guilty to these offenses, you are making a complete admission that you committed the allegations contained in those two counts of the indictment?

[MR. WATSON]: Yes, ma'am.

> THE COURT: You understand if you plead guilty, the Court may enter a judgment of guilt against you and proceed to sentence you in accordance with the law?
>
> [MR. WATSON]: Yes, ma'am.

Mr. Watson argues that the court failed to ensure that he understood the effect of his plea because the court described his guilty plea as a complete admission of the *allegations* contained in his indictment rather than a complete admission of his *guilt*. Mr. Watson's argument appears to be that the court was required to use the precise language contained in Crim.R. 11. Yet, a defendant's right to be informed of the effect of his plea is a nonconstitutional right subject to a substantial compliance standard. *Clark* at ¶ 31. Even assuming that the foregoing exchange did not constitute literal compliance with Crim.R. 11, Mr. Watson's plea was valid so long as the court substantially complied with the rule in informing him of the effect of his plea. *Id.* Mr. Watson has not offered any argument with regard to substantial compliance. *See* App.R. 16(A)(7). Consistent with our precedent, we decline to construct an argument on his behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Mr. Watson has not shown that his plea was not knowingly, intelligently, and voluntarily entered due to the trial court's failure to comply with Crim.R. 11(C)(2)(b). *See State v. Jones*, 9th Dist. Wayne No. 12CA0024, 2012-Ohio-6150, ¶ 30.

{¶11} Mr. Watson's primary argument on appeal is that his plea "was not voluntary and in fact was a result of duress and undue influence" because he had substitute counsel with him when he entered into it. According to Mr. Watson, he would have been more apt to discuss any concerns he had about his guilty plea with Attorney DiCaudo because the two had a well-established attorney-client relationship with one another by the date of trial. Mr. Watson argues

that his lack of rapport with substitute counsel (Attorney Yoder), combined with the fact that he entered into his plea on the date the matter was set for trial, resulted in his involuntary agreement to the plea.

{¶12} There is no evidence in the record that Mr. Watson expressed any concern with regard to having Attorney Yoder act as substitute counsel. The trial court specifically asked Mr. Watson at the beginning of the plea hearing whether he "consented to Mr. Yoder representing [him] * * * in Mr. DiCaudo's absence" and Mr. Watson replied affirmatively. Attorney Yoder noted that he had read Mr. Watson's entire file and had spoken repeatedly with Mr. Watson and the victim's mother. He also noted that, even before he had agreed to act as substitute counsel, he was familiar with the case because his law partner, Attorney DiCaudo, had discussed the case with him and he had helped Attorney DiCaudo find experts to review the medical records in the case during discovery. Mr. Watson never gave any indication that he did not want Attorney Yoder to act as his counsel or that he did not want to proceed with the plea hearing. Yet, he argues that the record contains evidence of the involuntary nature of his plea in that (1) he did not express satisfaction with the advice he received from his lawyers when the court asked him to do so, (2) he raised arguments in his post-conviction filings that evidenced his dissatisfaction with his attorneys, and (3) he raised arguments in his post-conviction filings that he would have known were waived, had he understood the effect of a guilty plea.

{¶13} When the trial court asked Mr. Watson whether he was "[s]atisfied with the advice and competence of [his] lawyers," he responded, "I honestly don't even know how to answer that." The trial court then went on to explain, however, that it was asking whether he had enough time to talk with Attorney Yoder, whether he understood what was happening, and whether he was in agreement with going forward with his plea. Mr. Watson then responded

affirmatively. He never expressed any dissatisfaction with the performance of his attorneys at the plea hearing. Moreover, in accepting a plea, a trial court is not obligated to ask a defendant whether he is satisfied with his counsel's representation. *State v. McCraney*, 9th Dist. Summit No. 26161, 2012-Ohio-3146, ¶ 9. "While trial courts may make that inquiry of defendants, it is not required by Crim.R. 11 * * *." *Id.*

{¶14} As to his post-conviction filings, Mr. Watson has not set forth any authority in support of the proposition that arguments raised in post-conviction filings can be evidence of a defendant's knowledge or willingness to enter into a plea at the plea stage. *See* App.R. 16(A)(7). Further, even assuming that Mr. Watson's post-conviction filings bear some kind of relationship to the nature of his plea, they are not in the record. As discussed in Mr. Watson's second assignment of error, this Court is confined to the record on appeal. *See State v. Huffman*, 9th Dist. Lorain No. 09CA009585, 2011-Ohio-397, ¶ 4.

{¶15} The record reflects that the trial court personally addressed Mr. Watson at the plea colloquy. Mr. Watson stated that he was 32 years old, had a GED, and had taken a few college courses. He agreed that no one had forced him to plead guilty or had promised him anything in exchange for his plea. He further agreed that he understood the allegations against him, that he was admitting to those allegations, and that his plea would result in the court finding him guilty and proceeding to sentence him. The court notified Mr. Watson of all of the penalties he faced, and Mr. Watson stated that he understood each penalty. The court also notified Mr. Watson of each constitutional right he was foregoing by pleading guilty, and Mr. Watson responded each time that he understood he was foregoing the pertinent right. At the end of the colloquy, Mr. Watson pleaded guilty to felony murder and child endangering. The record does not support Mr.

Watson's assertion that his plea was involuntarily entered or the product of duress or undue influence. As such, Mr. Watson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE LOWER COURT HAD NO JURISDICTION TO RULE ON MR. WATSON'S PRO SE MOTION FOR APPOINTMENT OF COUNSEL, MOTION FOR EXPERT ASSISTANCE, AND PETITION TO VACATE OR SET ASIDE JUDGMENT OF CONVICTION OR SENTENCE FILED ON FEBRUARY 22, 2013 BECAUSE AN APPEAL WAS PENDING IN THIS COURT OF APPEALS THEREFORE DIVESTING THE TRIAL COURT OF ANY FURTHER JURISDICTION[.]

{¶16} In his second assignment of error, Mr. Watson argues that the trial court erred by ruling on several motions that he filed after he had already filed his notice of appeal. Specifically, he argues that the court was divested of jurisdiction to rule on his motion for the appointment of counsel, his motion for expert assistance, and his petition to vacate or set aside the court's judgment. The record on appeal, however, does not contain any of the foregoing motions. To the extent Mr. Watson filed those motions and the trial court ruled on them, he never sought to amend his notice of appeal and supplement the record with the court's rulings. "As in any appeal, * * * this Court's review is limited to the record on appeal, and it is the appellant's responsibility to ensure that the record is provided." *Huffman*, 2011-Ohio-397, at ¶ 4. Because Mr. Watson's second assignment of error is premised upon matters outside of this Court's record, it is overruled.

### III.

{¶17} Mr. Watson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for correction of the sentencing entry as it relates to the matter of the imposition of post-release control.

Judgment affirmed in part,
reversed in part,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.