[Cite as *State v. Fletcher*, 2015-Ohio-4059.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. OT-14-033 |
| Appellee | Trial Court No. 14 CR 040 |
| v. | |
| Alex F. Fletcher | **DECISION AND JUDGMENT** |
| Appellant | Decided: September 30, 2015 |

* * * * *

Mark E. Mulligan, Ottawa County Prosecuting Attorney, and
Joseph H. Gerber, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Defendant-appellant, Alex F. Fletcher, appeals the judgment of the Ottawa County Court of Common Pleas sentencing him to eight years and eighteen months in prison and three years of mandatory post-release control.

**{¶ 2}** On April 17, 2014, the Ottawa County grand jury indicted Fletcher on one count of inducing panic, in violation of R.C. 2917.31(A)(1), a felony of the second degree, one count of disrupting public services, in violation of R.C. 2909.04(A)(3), a felony of the fourth degree, and one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree.

**{¶ 3}** After initially entering a plea of not guilty, Fletcher entered into a plea agreement in which he agreed to tender guilty pleas to the disrupting public services and robbery charges. He also agreed to pay restitution in the amount of $530.99. In turn, the state agreed to dismiss the inducing panic charge.

**{¶ 4}** At the June 11, 2014 plea change hearing, the trial court advised Fletcher of the constitutional rights he was waiving by entering the guilty pleas. It also advised Fletcher of the potential penalties relating to the offenses to which he was pleading guilty, in relevant part, as follows:

> [Court]: When it comes to sentencing, I have two options. One is to send you to prison. The other is to place you on probation.
>
> I am going to talk about prison first. Much of what I will talk about prison is how you might be able to get out early.
>
> First, you could be sent with what is called a risk reduction sentence. A risk reduction sentence means that when you go to the institution, they would do an evaluation of you to determine what it is they could best do to keep you from ever coming back to prison again. It could be some sort of

2.

classes, treatment, programming. Whatever it is, if you were successful in doing that and if you were well behaved, your prison sentence could be reduced by as much as 20 percent. Do you understand that?

[Fletcher]: Yes, sir.

[Court]: If you are not sent with a risk reduction sentence, but you are still well behaved, that is called earning good time. Good time can reduce your sentence by as much as 8 percent. Do you understand that?

[Fletcher]: Yes, sir.

[Court]: You could be eligible for intensive prison program or transitional control. Those are two programs that are available in the prison system.

They can significantly reduce the amount of time that you spend in the institution. Now you would need to apply to be in those programs. You would need to be accepted by the prison in those programs and the Court would need to agree that those programs were appropriate for you.

As I said, if you were able to get into those programs, successfully complete them, they could significantly reduce the amount of time that you spend in prison. Do you understand that?

[Fletcher]: Yes, sir.

3.

[Court]: You could be eligible for Judicial Release as soon as 30 days after you reach the State Institution. The final decision about Judicial Release though remains with the Court. Do you understand that?

[Fletcher]: Yes, sir.

[Court]: If you are released from prison early under any circumstances, you would be under someone's supervision, probably the supervision of this Court. If you violated the terms of your supervision for early release, you could just be returned to prison for any amount of remaining prison time, do you understand that?

[Fletcher]: Yes, sir.

[Court]: Now you may be required to serve a three-year term of Post Release Control, what we used to call parole, following your release from prison.

If you violate the terms of Post Release Control, you can be returned to prison for up to one-half of your prison sentence * * * do you understand that?

[Fletcher]: Yes, sir.

[Court]: If you are not sent to prison, you could be placed on probation. Probation could last for as long as five years. Probation can and almost always does include some jail time * * * do you understand that?

[Fletcher]: Yes sir.

4.

* * *

[Court]: All right.  So we have covered a lot of ground.  Having talked about all those things, is it still your intention to enter a guilty plea?

[Fletcher]:  Yes, sir.

[Court]: Let's talk about Count 2, disrupting public services.  That says that on the 1st day of April, 2014, you did something that brings you here today.  What was that?

[Fletcher]:  It all started the night before.  I was using drugs and hanging out with a couple guys from out of town.  I was really bad on heroin, and I had been getting high pretty much the whole day before, and it was like four o'clock in the morning, and we were riding around.  And one of the guys suggested that we rob a gas station.

At first, I didn't want to do it. Honestly, I didn't want to look weak in front of them, to be honest, and I started making excuses.  Well, what if the cops come?  And some time went on * * *.

He suggested I rob a pharmacy, and we sat outside the pharmacy for a while, and he said, "Oh, if you rob that, you can get the pills and you will never be [pill] sick and we can get money."

To me, at the time, you know, "Oh, that sounds good, I will have pills, I won't be sick."

5.

I told him I was still worried about the cops and I didn't want to rob a pharmacy, so he got on to Route 2 * * * back toward Erie Gardens, and I was sort of nodding out from heroin.

He said that we wouldn't have to worry about the cops. He made a phone call, which I later found out was a bomb threat [to Port Clinton High School], and when he told me that I didn't have to worry about the cops, I didn't really question him. We drove into town and he said there is no one there at that Smoke Shop, maybe we should try that, and he parked at the car wash by the Smoke Shop. I had a baseball bat and I just had it tucked into my arm. * * * I walked in with the bag. And as soon as I walked in, I dropped the bag and I was – I just said, "Give me the money." And the lady took the bag and she put the money in it.

Then I ran out and ran back to the car, and the guy took me back to Cleveland where he was from, and I got more heroin.

{¶ 5} After Fletcher's statement, an off-the-record discussion was held and the court took a brief recess. Back on the record, the following dialogue occurred:

[Court]: Two changes since we left, Mr. Fletcher. One is they changed the robbery section from 2911.02(a)(2) to 2911.02(A)(1). Do you understand that?

[Fletcher]: Yes, sir.

[Court]:  It is my understanding that it doesn't make any difference in the penalty, but it is as you have described the offense.

[Fletcher]: Yes, sir.

[Court]:  The other change is that after prison release, if you are sent to prison, you will have a mandatory three years of Post-Release Control. It is not maybe or up to, but it is a mandatory three-year term of Post Release Control.  Do you understand that?

[Fletcher]:  Yes, sir.

[Court]:  Does any of that change your willingness to make an admission today?

[Fletcher]: No, sir.

* * *

[Court]:  All right.  Mr. Fletcher, are you satisfied after all these changes?

[Fletcher]:  Yes, sir.

[Court]:  Is it still your intention to make an admission of those two offenses?

[Fletcher]: Yes, sir.

{¶ 6} A sentencing hearing was held August 6, 2014.  Both Fletcher and his counsel made statements to the court.  Fletcher expressed his shame and regret and then thanked his family and friends for support.  Fletcher's counsel acknowledged that

7.

Fletcher had "been involved in the system since he was 14, 15 years old." Counsel indicated that Fletcher was "very realistic about the possibility that he is going to be punished in terms of incarceration," but asked the court to consider a sentence that would include treatment for his "very, very bad" substance abuse issues.

{¶ 7} After indicating that it had considered the in-court statements, the pre-sentence report, and a written victim impact statement, the trial court found appellant guilty of robbery, in violation of R.C. 2911.02(A)(1), a felony of the second degree, and complicity to disrupting public services in violation of R.C. 2923.03(A)(2) and 2929.04(A)(3), a felony of the second degree. The trial court then sentenced Fletcher to eight years in prison and three years of mandatory post-release control for the robbery offense and eighteen months in prison for the complicity to disrupting public services offense. The sentences were ordered to be served consecutive to one another for a total of eight years and eighteen months in prison. Fletcher was ordered to pay restitution in the amount of $530.99. It is from this judgment that Fletcher appeals, assigning the following errors:

> 1. Appellant's guilty plea was involuntary and unknowing when the trial court misinformed him about judicial release and post-release control.

> 2. The maximum and consecutive sentence is not supported by clear and convincing evidence.

8.

## FIRST ASSIGNMENT OF ERROR

{¶ 8} In his first argument under this assignment of error, Fletcher asserts that his guilty pleas were not knowingly and intelligently made because the trial court misrepresented the time frame in which he would become eligible for judicial release.

{¶ 9} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." (Citations omitted.) *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). *See also* Crim.R. 11(C).

{¶ 10} Crim.R. 11(C)(2) details the trial court's duty in a felony plea hearing to address the defendant personally and to convey certain information to the defendant. "If a trial judge chooses to offer an expanded explanation of the law in a Crim.R. 11 plea colloquy, the information conveyed must be accurate." *State v. Clarke*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 16. "[W]hen a defendant's guilty plea is induced by erroneous representations as to the applicable law, including eligibility for judicial release, the plea has not been entered knowingly and intelligently." (Citations omitted.) *State v. Loyd*, 6th Dist. Erie Nos. E-10-055, E-10-056, 2011-Ohio-2964, ¶ 18. "In order to establish the necessary inducement to vacate a guilty plea, the defendant must make a two part showing. First, the defendant must show that he or she was misinformed as to the applicable law." *Id*. at ¶ 19. "Second, the defendant must demonstrate that he or she was prejudiced by the misinformation." *Id.* at ¶ 20.

9.

{¶ 11} Here, the trial court's statement that Fletcher "could be eligible for Judicial Release as soon as 30 days after" he is transported to prison did not "misinform" Fletcher of his potential for judicial release. If the trial court had elected to send Fletcher to prison only on the fourth-degree felony charge, Fletcher would have been eligible for judicial release after 30 days of incarceration at the state institution. Under a second potential sentencing scenario, Fletcher would have been eligible for judicial release after five years in prison. Under a third potential sentencing scenario, Fletcher would have received only probation instead of prison.

{¶ 12} Assuming, arguendo, that the trial court's statements could be construed as a misrepresentation of applicable law, Fletcher nonetheless fails to demonstrate prejudice. There is no indication that Fletcher was led to believe he *would*, in every potential sentencing scenario, be eligible for judicial release after 30 days and that such belief induced his guilty pleas as required by *Lloyd*. *Id.* at ¶ 29. Accordingly, Fletcher's first argument under his first assignment of error is not well-taken.

{¶ 13} In his second argument under this assignment of error, Fletcher asserts that the trial court failed to comply with Crim.R. 11(C) when it gave him incorrect information about post-release control, "effectively accepted" his statement of the case, and then gave him the correct information about the mandatory nature of the post-release control.

{¶ 14} In response, the state asserts that Crim.R. 11(C) only requires a trial court to properly inform a defendant about the terms of post-release control *before* accepting

10.

the defendant's guilty plea. The state asserts that after the trial court gave Fletcher the correct post-release control information, it specifically asked Fletcher if it was still his intention to make an admission to the two offenses. In response to the trial court's inquiry, Fletcher indicated that it was still his intention to make such an admission. Under these circumstances, we find that the trial court did substantially comply with the requirement to notify Fletcher of the mandatory nature of post-release control prior to accepting his guilty pleas. Accordingly, Fletcher's second argument under his first assignment of error is not well-taken.

## SECOND ASSIGNMENT OF ERROR

{¶ 15} In his second assignment of error, Fletcher argues that maximum consecutive sentences are not supported by clear and convincing evidence.

{¶ 16} Recently, in *State v. Banks*, 6th Dist. Lucas No. L-13-1095, 2014-Ohio-1000, ¶ 11-12, we explained:

> R.C. 2929.14(C)(4) now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find the sentence is necessary to protect the public from future crime or to punish the offender. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the trial court must find that at least one of the following applies: (a) the offender committed one or more of the multiple offenses while the offender was

11.

awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

However, the trial court is not required to recite any "magic" or "talismanic" words when imposing consecutive sentences provided it is "clear from the record that the trial court engaged in the appropriate analysis." *State v. Murrin*, 8th Dist. Cuyahoga No. 83714, 2004-Ohio-3962, ¶ 12.

{¶ 17} Then, in *State v. Payne*, 6th Dist. Lucas Nos. L-13-1024, L-13-1025, 2014-Ohio-1147, we referenced the long standing premise that a trial court speaks through its judgment entries and found that while a court might fully explain its reasons for ordering consecutive sentences and make the statutory mandated findings required under R.C. 2929.14(C)(4) at the sentencing hearing, those findings must be reflected in its judgment entry. *Id.* at ¶ 13-16.

12.

{¶ 18} Upon review of the August 7, 2014 sentencing judgment entries and the transcript of the August 6, 2014 sentencing hearing, we find that the trial court did engage in the first step of the consecutive sentence analysis – that the sentence is necessary to protect the public from future crime or to punish the offender – when, during the sentencing hearing, it held that consecutive sentences were "necessary to protect the public from future crime," and to "punish the offender."   We further find that the trial court's findings were sufficiently reflected in its judgment entry when it declared nearly identical findings.

{¶ 19} The record reflects that the trial court did engage in the second step of the consecutive sentence analysis – that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public  – when, during the sentencing hearing, it stated:

When it comes to sentencing, the Court is told to look to 2929.11 of the Ohio Revised Code.  That says, "The Court shall be guided by the overriding purposes of felony sentencing.  The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the Court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.

"To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from

13.

future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public or both.

"A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division A of this section and be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and be consistent with sentences imposed for similar crimes committed by similar offenders.

* * *

2929.12 tells me that this is not a case that requires a mandatory prison sentence. I have considered the sentencing factors set forth in 2929.12. The more likely recidivism factors outweigh the less likely factors. The more serious factors outweigh the less serious factors.

The trial court's findings were sufficiently reflected in its judgment entry when it asserted that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶ 20} The record reflects that the trial court engaged in the third step of the consecutive sentence analysis – that at least one of the three conditions set forth in R.C. 2929.14(C)(4) applies – when it stated:

The Court * * * finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused

by two or more of the multiple offenses so committed was so great or so unusual that no single prison term for these offenses committed as part of the courses of conduct adequately reflects the seriousness of your conduct.

The trial court's findings were sufficiently reflected in its judgment entry when it asserted that "the harm caused by two or more of the multiple offenses so committed was so great and unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶ 21} Recently, the Second District Court of Appeals explained that "[i]n felony sentencing, the trial court is required to weigh all relevant factors invoked by the facts of the case, and the act of balancing different factors and deciding which factors outweigh others necessarily involves the exercise of judicial discretion." *State v. Mansley*, 2d Dist. Montgomery No. 26417, 2015-Ohio-2785, ¶ 8. It is important to note, however, that a "trial court is not required to state reasons to support findings in support of imposition of consecutive sentences." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, paragraph one of syllabus. Rather, the findings made in the sentencing entry "must be supported by the record from the sentencing hearing." *State v. Jude*, 6th Dist. No. WD-13-055, 2014-Ohio-2437, ¶ 10. We agree. Here, it is clear that trial court exercised its judicial discretion when weighing all relevant factors invoked by the facts of the case and the findings made are supported by the record. Appellant's second assignment of error is not well-taken.

15.

## CONCLUSION

{¶ 22} For the reasons set forth above, the judgment of the Ottawa County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                JUDGE

Thomas J. Osowik, J.

                _____

James D. Jensen, J.        JUDGE
CONCUR.

                _____
                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.