[Cite as *State v. Young*, 2016-Ohio-2720.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103024

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DARRYL A. YOUNG, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588695-A

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** April 28, 2016

**ATTORNEY FOR APPELLANT**

Stephanie L. Lingle
1360 East 9th Street, Suite 910
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Anthony Thomas Miranda
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Darryl A. Young, Jr. ("Young"), appeals his attempted felonious assault conviction. He raises the following two assignments of error:

1. The trial court erred in finding Young's change in plea to have been made voluntarily.

2. Young did not have effective assistance of counsel.

**{¶2}** We find no merit to the appeal and affirm.

### I. Facts and Procedural History

**{¶3}** Young was charged with one count of felonious assault, a second-degree felony, for allegedly assaulting a man who refused to give him 50 cents. The charge included a notice of prior conviction and a repeat violent offender specification.

**{¶4}** The court appointed counsel to represent Young at his arraignment. The attorney-client relationship was brief, and counsel moved to withdraw after only one month, explaining that "[d]efendant and undersigned counsel have a broad range of differences, and cannot communicate effectively." The trial court granted the motion to withdraw and appointed new counsel.

**{¶5}** Two weeks after new counsel was appointed, Young filed a pro se motion seeking permission to be present at all proceedings. Meanwhile, counsel demanded discovery and began preparing the case for trial. Following a pretrial, the court referred Young to the court psychiatric clinic for an evaluation to determine his competency to stand trial. However, the evaluating psychologist stated in a report that he was unable to

complete the evaluation because Young "refused or was unable to cooperate with his evaluation."

{¶6} Following the psychologist's recommendation, the court referred Young to Northcoast Behavioral Healthcare ("Northcoast") for a 20-day competency evaluation. In the written evaluation, the psychologist at Northcoast opined that

> Mr. Young is malingering or exaggerating his illness. It's my opinion he has antisocial personality disorder with borderline and narcissistic traits. And so Mr. Young has the capacity to understand the nature and objective of the proceedings against him and has the capacity to assist in his defense.

(Tr. 155.)

{¶7} Young subsequently filed, pro se, a motion to disqualify the judge and for a mistrial and a motion to dismiss the indictment. The court did not rule on Young's pro se motions because he was represented by counsel. Shortly thereafter, Young advised the court that he wished to represent himself pro se, and the court held a hearing to ensure that Young knowingly, intelligently, and voluntarily executed a waiver of his right to counsel.

{¶8} At the hearing, Young explained he was dissatisfied with both court-appointed lawyers because they refused to do certain things he wanted them to do. He also complained he needed more time on the jail computer to find the last names of witnesses and to conduct research. According to Young, he was only entitled to use the jail computer for two hours per day if someone was not using it. (Tr. 49.) An employee of the jail advised the court that pursuant to jail policy, the computer is only accessible to inmates with civil cases. (Tr. 49.) The trial court provided an order giving Young

access to the jail computer in accordance with jail policies and procedures.  (Tr. 50.)

Young also advised the court that he was willing to plea bargain if the state would offer

something less than a guilty plea to the indictment.   (Tr. 54-55.)

{¶9} The court thoroughly explained the perils of self-representation.  The court

also explained that Young would be held to the same standards as an attorney.  After

executing the waiver of counsel, Young stated, "This is going to suck."   When the court

inquired as to what Young meant by the statement, Young explained he was concerned he

would have little access to the jail computer.  The court had previously explained that

lack of access to resources "is one of the perils that you face with representing yourself

and unfortunately being incarcerated further compounds things."  (Tr. 47-48.)   Finally,

the court advised Young: "We're not giving you any preferential treatment in this case,"

and Young replied, "I'm screwed."

{¶10} The day after the hearing, the court held a second hearing for the purpose of

providing Young access to the state's discovery.  The state produced two DVDs and a

thick stack of documents.  One DVD contained surveillance footage from inside Tower

City where the assault occurred.  According to the state, this video showed Young

suddenly attacking the victim, punching him several times in the head, and biting off a

portion of his ear.  The other DVD contained statements Young and the victim made to

police describing the event.   Young viewed the DVDs in court.

{¶11} Continuing the conversation from the previous day, Young informed the

court that he had the full names of his witnesses but lamented that he had no way to

contact them from the jail because his use of a Google account to contact people is against jail policy. He complained, "So now I'm stuck without any of my witnesses." In response, the court explained that it would provide Young with defense subpoenas to compel witnesses to appear for trial because compulsory process is one of his constitutional rights. Young was dissatisfied with the court's response and insisted that he have permission to use the jail computer to contact witnesses.

{¶12} After discussing the challenges Young would have in preparing a defense from jail, the court and Young discussed the possibility of reappointing counsel. The court explained that "hybrid" representation, where a defendant acts as co-counsel with his lawyer, is not permitted by law, and that the court would not allow Young to vacillate between acting pro se and having counsel. During the discussion, the following exchange took place:

> THE COURT: What is your intention with respect to pro se or with counsel? Because you've indicated to me you're kind of waffling or wavering as to what your decision is.
>
> MR. YOUNG: I have to — I'm forced to go with counsel, because I have no other — I have no —
>
> THE COURT: No, no, no, no, no, no. * * * You have rights and I will provide you with whatever rights you choose. But to try to sit here and imply that someone is forcing you to do something, that's not going to fly. You have choices. You have decisions to make.
>
> I'm happy to answer all your questions and provide you as much information as I can on all these issues for you to make an informed decision. * * * Would you like to proceed with or without counsel? That's the issue.

MR. YOUNG: I have to proceed with counsel because I can't get things done without it.

THE COURT: All right.

{¶13} Finally, Young asked the trial court to order release of his property from the jail. Young maintained that while he was at Northcoast, an envelope of papers and other items of personal property were confiscated from him and never returned. The court advised Young to discuss this matter with his attorney after the attorney is reappointed.

{¶14} The court reappointed counsel, and the parties appeared in open court and on the record for the third time. The judge advised Young he had learned that Young lost computer privileges because he violated jail policies for computer usage. (Tr. 111.) An investigator at the jail informed the prosecutor that Young lost his computer privileges because he used his personal Google Voice account to send and receive text messages from family and friends. Young also asked a friend to email him videos of male genitalia, and there were copies of pictures and videos of male genitalia discovered on the computer during the time Young was using it. (Tr. 119.)

{¶15} The state advised the court that it offered a plea bargain to Young through his reappointed counsel. The state agreed to reduce the felonious assault charge, a second-degree felony, with notice of prior conviction and repeat violent offender specifications, to attempted felonious assault, with no specifications. Counsel advised the court that he had discussed the plea with Young, including the difference in penalties. With respect to the state's offer, the following dialogue occurred in open court and in Young's presence:

[COUNSEL]: My client would have approximately eight months or so in county jail.  I would absolutely make no promises as to what this Court would do, but that's significantly different than the potential two to eight years under the felony of the second degree that currently was our understanding prior to today.

THE COURT: Or to the 18 years the way it's indicted.

[COUNSEL]: That's correct.  We've spoken to that just briefly.  So I indicated to him that that's a vast improvement, if you will, or reduction.  * * *

So I think he's considering those things.  I'm not rushing him.  I just gave him information.

(Tr. 123.)

{¶16} Following this discussion, the court explained that while a conviction on the one count of felonious assault charged in the indictment carried a maximum prison term of 18 years, a conviction of attempted felonious assault without specifications carried only a maximum 36-month prison term.  Young asked the court whether there was a presumption of prison for the third-degree felony the state was offering in exchange for a plea.  The court advised Young that there was no presumption of prison, but the court might impose a prison term depending on his prior criminal record, what the victim has to say, and how he has historically behaved on probation.  The court explained that he would refer Young for a presentence investigation to learn more about him before sentencing.  Young did not enter a guilty plea at this time.

{¶17} Before the hearing concluded, Young once again asked about his confiscated property.  According to defense counsel, the papers contained the names of

possible character witnesses that counsel deemed were unnecessary for trial. Nevertheless, the court explained:

> I'm trying to make sure, Mr. Young, that your rights are protected, because if in the worst-case scenario you go to trial and you lose, you face a very lengthy sentence potential.
>
> The system has to have protections in place to make sure that you have been — all your rights have been protected. That includes the right to present a defense. And to the extent that information, if it's deemed relevant and usable or whatever by [defense counsel], he has to know about and have access to it.

{¶18} On the day of trial, Young indicated that he wanted to plead an insanity defense, and that because his trial counsel was refusing to assert it on his behalf, he wanted to once again terminate his relationship with counsel. The following conversation ensued:

> THE COURT: So, we have been round and round with that before, and I believe you can terminate your counsel, but you're going forward with the jury today. So having said that, would you give me again the five page waiver of right to counsel so I can go over it with Mr. Young?
>
> THE DEFENDANT: No, I wasn't talking about self-representation. I was talking about termination of my counsel.
>
> THE COURT: So there's two things that are going to happen today. The first is we're going to complete your case today, whether you go to trial, or not.
>
> The second issue is whether you want to represent yourself or have [counsel] represent you.
>
> THE DEFENDANT: I have no other alternative?
>
> THE COURT: We are going to trial today. I have had this conversation with you numerous times in the past and we chose this date specifically so

that we could bring your case to its conclusion today, either representing yourself or having [counsel] represent you.

However, you do have a right to counsel. I believe you also have the right to represent yourself at this point, but absent — there's nothing that indicates to me that [defense counsel] has a conflict of interest or is otherwise unable to represent you, so you don't have to have [defense counsel] represent you. You can represent yourself, but we're going forward today. What would you like to do?

THE DEFENDANT: I'm not having this forced upon me.

THE COURT: No, you're not having it forced upon you. But here's what we're going to do. [Bailiff], would you bring in the jury?

And I want to place on the record my history of dealing with Mr. Young, that he is being purposefully difficult in the way he responds to these question[s]. I believe it would clearly be in your best interest to have counsel representing you. And so I will continue on with this matter to have [defense counsel] represent you.

As I said, I believe the record is clear by the documents that are contained within the record and personal dealings with you, that you do not suffer from any mental illness or defects that would impact your ability to understand the nature of the proceedings that are happening against you.

My conversations with you, you are an intelligent individual. You are able to recite different dates and times that things happened and recall things. You are, I believe * * * clever enough to use the system. When we had prior conversation[s] with your ability to access the computer, instead you chose to use that contrary to the rules of the jail and go on certain cites and share inappropriate content with other persons.

So I am of the opinion that you have absolute clarity of what was going on and that you are also malingering.

Again, to reiterate, I believe it to be in your best interest to have good counsel represent you at the time of the trial, and so we're going to continue on in this fashion.

Would you bring the jury in, please?

{¶19} Just before the jury entered the courtroom, defense counsel advised the court that Young wished to accept the state's plea offer. The court asked Young if he truly wanted to entertain the plea, and Young replied, "Yes, sir." In response, the court stated:

> THE COURT: All right. And again * * * we have been through this. * * * I want you to understand I want you in no way to try to feel as though I am trying to jam a plea down your throat, so to speak.
>
> I'm prepared to go to trial, * * * we do have a jury standing in the hallway right now. We're prepared to go forward. I think we have been over all the issues sufficiently, but again, if you would like to avail yourself to your right to trial by jury, I am happy to provide you with that opportunity.
>
> We talked in the past. The chips will fall as they may. If they came back with a not guilty verdict, that's great. I'll wish you well and send you on your way. And of course, if they come back with a guilty verdict, I'll have to take a different approach.
>
> Sir, do you have any other questions about that issue?
>
> THE DEFENDANT: I wish to enter a plea.

{¶20} After statements from the prosecutor and defense counsel regarding the terms of the plea agreement, the court conducted a thorough Crim.R. 11 colloquy. The court advised Young of all the rights he was waiving by pleading guilty and explained that his conviction will be considered a violation of postrelease control that would subject him to additional prison time. The court also described the potential penalties he could receive for his conviction in this case. Upon questioning, Young advised the court that he understood what was happening and the rights he was waiving. However, when the court asked Young if he was satisfied with the services provided by defense counsel, Young complained:

I just wished that he fought harder for me, like as me. That's the reason I wanted to represent myself, because nobody is going to fight for me like me.

* * *

[H]e was more a thing of being cautious, and I'm more bold.

{¶21} When the court asked if Young was otherwise satisfied with counsel, Young replied: "Yes, I would say [defense counsel] is an adequate counsel and effective counsel."

{¶22} Pursuant to the plea agreement, Young pleaded guilty to one count of attempted felonious assault, a third-degree felony, with no specifications. The court sentenced Young to 30 months in prison. Young now appeals his conviction.

## II.  Law and Analysis

### A. Guilty Plea

{¶23} In the first assignment of error, Young argues the trial court erroneously concluded that he entered his guilty plea voluntarily. He contends he was forced to plead guilty because he was denied access to evidence. In the second assignment of error, Young contends his trial counsel was deficient because he (1) failed to locate a witness, (2) made no effort to obtain Young's property that was confiscated while he was at Northcoast, and (3) failed to present mitigating factors at the time of sentencing. He also argues that exculpatory evidence may have been lost as a result of counsel's ineffectiveness. We discuss these assigned errors together because they are closely related.

{¶24} Under Crim.R. 11(C)(2), before accepting a guilty plea, a trial court must personally address the defendant and (1) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty; (2) inform the defendant of and determine that the defendant understands the effect of the plea and that the court may proceed with judgment after accepting the plea; and (3) inform the defendant and determine that the defendant understands that he is waiving his constitutional rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.

{¶25} A trial court must strictly comply with the mandates of Crim.R. 11(C)(2) regarding the waiver of constitutional rights, meaning the court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 27. Failure to fully advise a defendant of his constitutional rights renders a plea invalid. *Id*. at ¶ 29.

{¶26} For nonconstitutional rights, scrupulous adherence to Crim.R. 11(C) is not required and "substantial compliance" is sufficient. *Veney* at ¶ 14, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

**{¶27}** The reviewing court conducts a de novo review to determine whether the trial court accepted a plea in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26. We are required to review the totality of the circumstances and determine whether the trial court complied with the requirements of Crim.R. 11(C). *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

**{¶28}** If the trial judge partially complied with the rule with respect to nonconstitutional rights, the plea may be vacated only if the defendant demonstrates a prejudicial effect. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. The test for prejudice is "'whether the plea would have otherwise been made.'" *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32, quoting *Nero* at 108.

**{¶29}** A claim of ineffective assistance of counsel is waived by a guilty plea, except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

**{¶30}** In order to establish the prejudice necessary for an ineffective assistance of counsel claim, the appellant must demonstrate there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty to the offense at issue and would have insisted on going to trial. *Williams* at ¶ 11, citing *State v. Xie*, 62

Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶31} On the day of trial, counsel described his attempts to locate a defense witness, but indicated that, despite his best efforts, he was unable to make contact with him. The record contains little evidence as to whether or not defense counsel eventually made efforts to obtain the property Young claimed was confiscated from him. Nevertheless, there is nothing in the record to indicate that the presence of the missing witness or the confiscated property would have changed the outcome of the proceedings.

{¶32} Young's claim that counsel was deficient because "exculpatory evidence may have been lost," during the first five months of the pretrial stages is similarly without merit. Young cannot demonstrate prejudice during these five months because he does not even know if there was exculpatory evidence to begin with. When a court is left to speculate as to whether any additional evidence existed, and what that evidence may or may not have shown, the defendant fails to establish the prejudice necessary to support an ineffective assistance of counsel claim. *State v. Spencer*, 8th Dist. Cuyahoga No. 69490, 2003-Ohio-5064, ¶ 12. Therefore, because Young's argument is purely speculative, he cannot demonstrate that the pretrial stages would have been different if counsel had acted differently.

{¶33} Young contends he did not enter his guilty plea voluntarily because he was forced to accept counsel against his wishes in order to gain access to legal resources and a computer. He also contends the court prevented him from being able to contact a

defense witness and prevented him from recovering his property, which he claims contained necessary evidence.

{¶34} However, Young is the only one to blame for his loss of access to the jail computer. The court gave him an order allowing him to conduct research on the jail computer, but Young lost his computer privileges because he used the computer in violation of jail policies. And, as previously stated, there is nothing in the record to suggest that Young would not have pleaded guilty if he had access to the missing witness or the confiscated property.

{¶35} Moreover, the record shows that Young knowingly, intelligently, and voluntarily pleaded guilty. Throughout several days of hearings, the court painstakingly explained to Young all of his rights as well as the ramifications of a guilty plea. During the plea colloquy, the following exchange took place:

> THE COURT: Do you understand that by your entering into this plea here today, that may constitute a probation violation, or prc violation which could subject you to additional time that you might get in this case? Do you understand that?

> THE DEFENDANT: It's not a may. It's a certainty. * * * That was one of the reasons why I wanted to try to get a lower felony, because I still have to answer to that.

{¶36} Indeed, Young volunteered several times that he would like to enter a plea bargain if the state made him an acceptable offer, and the state eventually did make such an offer. Young faced up to 18 years in prison if convicted of the charge and specifications alleged in the indictment. The state had surveillance video showing

Young attacking the victim. Thus, even if the missing witness could have provided some mitigating evidence, Young would still have had a substantial risk of conviction at trial.

{¶37} Yet, when Young was represented by counsel, the state reduced the charge and deleted the specifications in exchange for his plea. The longest prison term Young could receive to the reduced charge was 36 months. Moreover, the record reflects that the trial court informed Young, and determined that Young understood he was waiving his constitutional rights to a jury trial, to confront the witnesses against him, to call witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt. He also understood that no one could compel him to testify against himself and that no one could comment on his decision to remain silent. Therefore, the record shows that Young knowingly, intelligently, and voluntarily pleaded guilty to attempted felonious assault.

{¶38} Finally, Young argues his trial counsel was ineffective because he failed to present any mitigating statements at sentencing. This assertion is not supported by the record. Counsel argued that Young should receive credit for taking full responsibility for his actions. Counsel also asked the court to consider the fact that Young faces four additional years in prison for the postrelease control violation when it fashions his sentence. There is nothing in the record to show that defense counsel could have said any more than these statements.

{¶39} Moreover, counsel's mitigating statements seem to have had a positive impact on Young's sentence. Young was originally charged with felonious assault

because he bit off part of the victim's ear. Young also broke the victim's finger, which affected his work as a cook. These are serious injuries, and the court could have sentenced Young to a 36-month prison term. Yet the court imposed a lesser 30-month sentence, and Young had a history of prior convictions of violent crimes.

{¶40} Therefore, the record reflects that the court complied with all the requirements of Crim.R. 11(C) and that Young knowingly, intelligently, and voluntarily pleaded guilty. Counsel effectively represented Young by procuring a plea agreement that substantially reduced his potential prison time, and there is no evidence to suggest that Young was prejudiced in any way by counsel's performance.

{¶41} Accordingly, both assignments of error are overruled.

{¶42} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
MARY J. BOYLE, J., CONCUR